James E. DANIELS, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–83–150–CR.

Court of Appeals of Texas, Austin.

May 30, 1984.

---

Charles M. Hineman, Austin, for appellant.

Louis Crump, Dist. Atty., San Saba, Sam Oatman, Asst. Dist. Atty., Llano, for appellee.

Before SHANNON, EARL W. SMITH and GAMMAGE, JJ.

EARL W. SMITH, Justice.

James E. Daniels was found guilty by a jury of the offense of constructive delivery of more than one-fourth ounce of marijuana. Texas Controlled Substances Act, Tex. Rev.Civ.Stat.Ann. art. 4476–15, § 4.05(d) & (e) (1976). Punishment was assessed by the court at confinement in the Texas Department of Corrections for five years.

Daniels contends that the court erred in overruling his motion to quash the indictment in that it does not give adequate notice of the acts constituting the offense charged; he argues, also, that the trial court committed fundamental error in the charge to the jury by authorizing the jury to convict on a theory not alleged in the indictment. We agree with both assignments of error.

The Texas Controlled Substances Act, as it was in effect at the time of the alleged offense, in pertinent parts provided:

Sec. 4.05

(d) Except as otherwise provided by this Act, a person commits an offense if he knowingly or intentionally delivers marihuana.

(e) ... an offense under Subsection (d) of this section is a felony of the third degree.

Sec. 1.02

(8) "Deliver" or "delivery" means the actual or constructive transfer from one person to another of a controlled substance, whether or not there is an agency relationship. For purposes of this Act, it also includes an offer to sell a controlled substance.

*Id.*

Omitting the formal parts, the indictment charges that "James E. Daniels ... did then and there unlawfully, intentionally, and knowingly deliver to Kimberley Hughes *by con[s]tructive transfer* a quantity of marihuana in excess of one-fourth ounce." (emphasis added). In his "Amended Motion to Quash Indictment," Daniels alleged that the indictment is de-

fective in that it does not set forth the offense charged in plain and intelligible words, that it fails to allege the manner and means whereby the alleged acts were committed, and that "constructive transfer" is an ambiguous and conclusory legal term which is insufficient to give him proper notice of the offense charged and the acts constituting such offense. Timely presented, the motion was overruled.

■ The indictment on its face must charge the offense *in plain and intelligible words* so as to enable a person of common understanding to know what is meant. It must allege the offense with such certainty as to enable the accused to know what offense he will be required to defend himself against and to enable him to plead any judgment that may be pronounced on it as a bar to any further prosecution for the same offense. Tex. Const.Ann. art. I, § 10 (1955); Tex.Code Cr.P.Ann. arts. 21.02(7), 21.04, and 21.11 (1966).

In *Lewis v. State,* 659 S.W.2d 429, 431 (Tex.Cr.App.1983), the Court emphasized the above constitutional and code requirements:

When considering a motion to quash the indictment, it is not sufficient to say the defendant knew with what offense he was charged; rather, the question presented is whether the face of the indictment or charging instrument sets forth in plain and intelligible language sufficient information to enable the accused to prepare his defense. *Marrs v. State,* 647 S.W.2d 286, 289 (Tex.Cr.App. 1983); *McManus v. State,* 591 S.W.2d 505 (Tex.Cr.App.1979); *Haecker v. State,* 571 S.W.2d 920 (Tex.Cr.App.1978).

■ The State alleged the offense in the terms of the statute. Ordinarily, this is legally sufficient. *Marrs v. State, supra; Thomas v. State,* 621 S.W.2d 158 (Tex.Cr. App.1980); *Parr v. State,* 575 S.W.2d 522 (Tex.Cr.App.1978). However, even where an act or omission of the defendant is statutorily *defined,* if that *definition* provides for more than one manner or means to

commit that act or omission, upon timely request, the State *must allege the particular manner or means* it seeks to establish. In *Ferguson v. State*, 622 S.W.2d 846, 851 (Tex.Cr.App.1980), where the indictment failed to allege which of the three statutory methods of delivery of heroin it relied upon, the Court held that the motion to quash the indictment was improperly overruled. *Cf. Coleman v. State*, 643 S.W.2d 124 (Tex.Cr.App.1982); *McBrayer v. State*, 642 S.W.2d 504 (Tex.Cr.App.1982); and *Gorman v. State*, 634 S.W.2d 681 (Tex.Cr.App.1982) where in each case the Court held that it was error to overrule a motion to quash the indictment for failure to specify which of the statutorily defined types of appropriation the defendant resorted to.

■ Also, where the statutory language is not completely descriptive, so that particularity is required to afford the defendant notice, merely tracking the language of the statute is insufficient. In *Haecker v. State*, 571 S.W.2d 920, 921 (Tex.Cr.App. 1978), the information alleged that the defendant "did then and there unlawfully, intentionally, and knowingly torture an animal, namely a dog." The defendant's motion to quash, overruled by the court, claimed that the information provided inadequate notice; he contended on appeal that the information failed to apprise him of the charge against him with sufficient particularity to prepare his defense. The State argued that the legislative definition of torture as defined in Tex.Rev.Civ.Stat.Ann. art. 180 (1969), to wit: "the words 'torture' and 'cruelty' include every act, omission or neglect whereby unnecessary or unjustifiable pain or suffering is caused, permitted or allowed to continue when there is a reasonable remedy or relief," makes the inclusion of a definition in the information unnecessary. The Court, holding that the information was insufficient to give the defendant adequate notice to enable him to adequately prepare his defense, said at p. 921:

> In many cases, an information will be considered sufficient if it follows the language of the statute. However, this rule applies only where the information is framed under a statute which defines the act constituting the offense in a manner that will inform the accused of the nature of the charge. In other words, if the language of the statute is itself completely descriptive of the offense, an information is sufficient if it follows the statutory language. *Lopez v. State*, 494 S.W.2d 560 (Tex.Cr.App.1973); *Bush v. State*, 97 Tex.Cr.R. 219, 260 S.W. 574 (1923). By the same test, if the language of the statute is not completely descriptive, then merely tracking the statutory language would be insufficient. As was pointed out in *Conklin v. State*, 144 Tex. Cr.R. 343, 162 S.W.2d 973 (1942), "It is not always sufficient to follow the language of the statute. There are cases that require greater particularity, either from the obvious intention of the Legislature or from the application of known principles of law."

In *Drumm v. State*, 560 S.W.2d 944 (Tex.Cr.App.1977), the State alleged that the defendant drove his vehicle while his license was suspended under Tex.Rev.Civ. Stat.Ann. art. 6687b, § 24 (1977). Section 24 provided five different ways in which the accused's license could have been suspended. Defendant, by motion to quash, sought a specific allegation as to which subsection of Section 24 the State would rely on. The Court held that the trial court erred in overruling the motion to quash and stated, that in order for the defendant to prepare his defense, he was entitled to notice of the particular suspensions upon which the State was going to rely. *Id.* at 947.

■ The defendant, in *Cruise v. State*, 587 S.W.2d 403 (Tex.Cr.App.1979) was charged with robbery. The Court held that the term "cause bodily injury" in a robbery indictment did not, upon a timely motion to quash, give precise notice of the offense with which the defendant was charged, noting that the term "cause bodily injury" was susceptible *to an almost endless list of possible meanings* and that it would have been impossible for the State to prove the

element without also showing the *manner* in which it was done. *Id.* at 404. Generally, a motion to quash will be granted if the facts sought are essential to giving notice. *See Ellis v. State,* 613 S.W.2d 741 (Tex.Cr. App.1981); *Brasfield v. State,* 600 S.W.2d 288, 295 (Tex.Cr.App.1980); *Lindsay v. State,* 588 S.W.2d 570, 572 (Tex.Cr.App. 1979); and *Amaya v. State,* 551 S.W.2d 385, 387 (Tex.Cr.App.1977).

Applying the above principles, we turn to the indictment in this case, which alleges that the appellant "did ... deliver to Kimberley Hughes by *con[s]tructive transfer* a quantity of marihuana." The thrust of Daniels' argument is that the term "constructive transfer" is too vague to afford him adequate notice to prepare his defense. We agree. It is true that "deliver" is defined to mean *actual* or *constructive* transfer. Had Daniels been charged with *actual* transfer, the allegation, tracking the statute, would be sufficient. But what is meant by "constructive transfer"? Is that term a sufficient definition of "deliver" so as to afford adequate notice to Daniels and enable him to prepare his defense? We do not think so.

Nowhere in the Penal Code is "constructive transfer" or "constructive delivery" defined. When statutory words are not defined, they are ordinarily given their plain meaning without regard to distinction between construction of penal laws and laws on other subjects, unless the act clearly shows that they were used in some other sense. *Campos v. State,* 623 S.W.2d 657, 658 (Tex.Cr.App.1981); *Sanford v. State,* 492 S.W.2d 581, 582 (Tex.Cr.App. 1973); *Taylor v. Firemen's and Policemen's Civil Service Commission of City of Lubbock,* 616 S.W.2d 187, 189 (Tex. 1981). The statute must be construed as written. *Jones v. State,* 610 S.W.2d 535, 536 (Tex.App.1980, no pet.).

Applying these standards, what is meant by delivery by constructive transfer, or constructive delivery? Actual and constructive delivery are defined in Black's Law Dictionary, 4th Ed.Rev. at 515 (1968) as follows:

Actual delivery consists in the giving real possession to the vendee or his servants or special agents who are identified with him in law and represent him. *Carr v. St. Louis-San Francisco Ry. Co.,* Mo.App., 284 S.W. 184, 185. It is a formal immediate tradition of the property to the vendee. *Bridgham v. Hinds,* 120 Me. 444, 115 A. 197, 199, 21 A.L.R. 1024. It contemplates a manual transfer of the property. *Callan v. Mutual Life Ins. Co.,* La.App., 147 So. 110, 111.

Constructive delivery is a general term, comprehending all those acts which, although not truly conferring a real possession of the thing sold on the vendee, have been held, by construction of law, equivalent to acts of real delivery.

Constructive delivery includes symbolic or substituted delivery and all those *traditiones fictae* which have been admitted into the law as sufficient to vest the absolute property in the vendee and bar the rights of lien and stoppage *in transitu,* such as marking and settling apart the goods as belonging to the vendee, charging him with warehouse rent, etc. *See in re Nesto,* C.C.A.Pa., 270 F. 503. A constructive delivery of personalty takes place when the goods are set apart and notice given to the person to whom they are to be delivered. *The Titania,* C.C.A., 131 F. 229, 65 C.C.A. 215, or when, without actual transfer of the goods or their symbol, the conduct of the parties is such as to be inconsistent with any other supposition than that there has been a change in the nature of the holding. *Swafford v. Spratt,* 93 Mo. App. 631, 67 S.W. 701.

"Constructive" is defined in 16A C.J.S. at 1239 (1956) as:

Derivative, or inferential; that which is established by the mind of law in its act of construing *facts, conduct, circumstances* or instruments; that which has *not* the character assigned to it in its own essential nature, but *acquires such character* in consequences of the way in which it is regarded by a rule or a policy

of law; hence, *inferred, implied, made out by legal interpretation.*

(emphasis added and footnotes omitted).

The meaning of "constructive transfer" has been addressed by the Court of Criminal Appeals, but not in the context of a motion to quash an indictment for failure to allege sufficient facts to put the defendant on notice of such meaning. *See Rasmussen v. State,* 608 S.W.2d 205, 209 (Tex. Cr.App.1980), in which the Court acknowledged that it had not previously addressed the meaning of the phrase and turned to decisions of other states for guidance, citing *State v. Ellis,* 239 S.E.2d 670 (W.Va. 1977); *State v. Guyott,* 195 Neb. 593, 239 N.W.2d 781 (1976); and *State v. McHorse,* 85 N.M. 753, 517 P.2d 75 (1973). In *Ellis, supra,* at 673, the West Virginia Court said:

> We interpret a "constructive transfer" to be the *transfer* of a controlled substance *either belonging* to an individual *or* under *his control by some other person* or agency *at the instance or direction* of the *individual* accused of such transfer.

(emphasis added). Under such construction the controlled substance, must

(1) belong to an individual, *or*

(2) be under his control

(3) be transferred at his *instance, or*

(4) be transferred under his *direction*

(5) be transferred by some other *agency, or*

(6) by some other *person.*

In *Guyott, supra* at 782, the Nebraska Court simply said "[i]t is not necessary for the State to show actual physical transfer of a controlled substance from the defendant. The statutory definition of delivery clearly encompasses more than actual, direct or physical transfers. It includes constructive and indirect transfers as well." No help was given by the Court in defining constructive transfer.

In *McHorse, supra* at 78, the New Mexico court held that placing the controlled substance in the mail *had the effect of turning the controlled substance over to an agent for delivery,* and that this amounted to *a* constructive transfer.

As analyzed by the Court of Criminal Appeals, only *Ellis defined* constructive transfer. In *Ellis,* the defendant had transferred marihuana to an undercover agent and received payment through a third person acting under his direction. In *Guyott,* the defendant *told* an undercover agent where he had hidden the controlled substance, in exchange for an agreed price. The agent retrieved the substance and paid the defendant for it. The Court held the evidence sufficient to show constructive transfer. Thus, the Court of Criminal Appeals had *three* different fact situations in which it considered constructive transfer, but no definition, except as in *Ellis.* The Court did not state its own definition of constructive transfer, but stated "The common element of these cases is that *prior* to delivery the substance involved was *directly* or *indirectly* under the defendant's control." *Rasmussen v. State, supra* at 210. (emphasis added).

In *Fox v. Young,* 91 S.W.2d 857, 859 (Tex.Civ.App.1936, no writ) the court defined constructive delivery as follows:

> Constructive delivery is a general term comprehending *all those acts* which, although not truly conferring a real possession of the thing sold on a vendee, have been held *constructione juris,* equivalent to acts of real delivery. 12 C.J. p. 1303.

(emphasis added).

In *Queen v. State,* 662 S.W.2d 338, 340 (Tex.Cr.App.1983), the indictment omitting formal parts alleged that the defendant did then and there unlawfully, knowingly and intentionally deliver a usable quantity of marihuana to Ben Neel in an amount more than one-fourth ounce and for remuneration by transferring the said marihuana into a motor vehicle within the care and control and custody of the said Ben Neel and by transferring the said marihuana to the actual custody of the said Ben Neel.

The appellant, in his motion to quash and on appeal, argued that this indictment was

insufficient to notify him of which legal theory of delivery the State would pursue. The Court noted that it had held in *Ferguson v. State*, 622 S.W.2d 846 (Tex.Cr.App. 1980) that it was error to overrule a motion to quash when the indictment simply alleged that the defendant did "unlawfully, intentionally and knowingly deliver to Jerry Powell, a controlled substance, namely heroin," and that the Court relied upon its prior rulings in *Cruise, supra, Haecker, supra, Drumm, supra, Lindsay, supra,* and *Amaya, supra. Queen, supra* at 340. In *Queen*, the Court held the motion was properly overruled, stating that the indictment was sufficient to allege *both* actual and *constructive* transfer. We note, first, that though the statutory phrase "constructive transfer," was not alleged, underlying facts were alleged with particularity, which the Court *specifically* held to constitute all the *requisite elements* of such offense. This being so, it was not necessary to precisely track the language of the statute. *Queen v. State, supra* at 341, citing *Rincon v. State*, 615 S.W.2d 746 (Tex.Cr.App.1981). The holding in *Queen* that we deem to be of utmost importance was that:

> While the term "delivery" is not precisely defined in the Controlled Substance Act, it should be noted that three types of "delivery" are contemplated by Art. 4476–15, Sec. 1.02(8), V.A.C.S.: (1) an actual transfer, (2) a constructive transfer, (3) an offer to sell. See *Ferguson*, supra, at p. 848. *As we noted in Rasmussen v. State, 608 S.W.2d 205 (Tex.Cr.App.1980), a constructive transfer may take several forms; the actor may constructively transfer narcotics to the intended recipient by entrusting the narcotics to an associate or the postal service for the delivery to the recipient, or the actor may place the contraband in a particular location and then advise the recipient of this location so that the recipient can retrieve the narcotics. While other possible forms of constructive transfer can be postulated as a method of "delivery" the critical factor is that "prior to the delivery the substance involved was directly or indirectly under the defendant's control." Rasmussen, supra at p. 210.*

*Queen, supra* at 340. (emphasis added).

As in *Rasmussen*, the Court in *Queen* held that "constructive transfer" may take several forms, enumerating three and adding that others "can be postulated...." *Id.* at 340.

■ The Court of Criminal Appeals has clearly held, then, that there are many types of conduct that could constitute delivery by constructive transfer. Here, the manner and means of such transfer are not alleged. The appellant Daniels was left to guess or assume that the State was going to prove one or all of the types of conduct that would in legal, not statutory, construction constitute constructive transfer. As pointed out in *Drumm, supra* at 947, an accused "is not required to anticipate any and all variant facts the state might hypothetically seek to establish."

We hold that the trial court erred in overruling appellant's motion to quash the indictment.

Further, we must sustain Daniels' assignment of error that there was fundamental error in the court's charge. The charge permits the jury to convict on a theory not alleged in the indictment, which alleges delivery *by constructive transfer*. In that part of the charge setting out abstract definitions, the court defined delivery as follows:

> Our law provides that a person commits an offense if he knowingly or intentionally delivers marihuana.

> By the term "deliver" as used in this charge, is meant the *actual or constructive* transfer from one person to another of marihuana, whether or not there is an agency relationship.

(emphasis added). No definition of constructive transfer was given and the law of parties was defined. In applying the law to the facts, the court charged:

Now, if you believe from the evidence beyond a reasonable doubt that the Defendant, JAMES E. DANIELS, either by his own conduct knowingly and intentionally delivered more than one fourth ounce of marihuana to Kimberley Hughes ... or acting with intent to promote or assist the *commission of the* offense aided JAMES E. WHITED to commit the offense charged, as defined above, and that the said JAMES E. WHITED did ... deliver more than one fourth ounce of marihuana to Kimberley Hughes ... you will find the Defendant guilty.

■ It is obvious that the court permitted the jury to convict the defendant for actual delivery, either by his own conduct, or as a party to actual delivery by Whited. Nowhere is the jury authorized to convict under the theory alleged in the indictment—constructive delivery. An omission from the charge of an allegation in the indictment has long been held to be fundamental error. *Cumbie v. State,* 578 S.W.2d 732, 733 (Tex.Cr.App.1979). When the charge substitutes a theory of the offense completely different from the theory alleged in the indictment, fundamental error occurs. *Id. See Young v. State,* 594 S.W.2d 428, 429 (Tex.Cr.App.1980).

■ In view of our disposition of this case it is not necessary to discuss other assignments of error, including the contention that the act in question is unconstitutional because of the vagueness of the term "constructive transfer." It is well settled that the constitutionality of a statute will not be determined in any case unless such a determination is absolutely necessary to decide the case in which the issue is raised. *Skinner v. State,* 652 S.W.2d 773 (Tex.Cr. App.1983); *Ex Parte Salfen,* 618 S.W.2d 766, 770 (Tex.Cr.App.1981).

Having found that the court erred in overruling appellant's motion to quash, we reverse the judgment of conviction and remand the cause with instructions to dismiss the indictment.