*558 OPINION
BURGESS, Justice.
Johnny Ray Phillips was indicted for delivery of marijuana. He elected a jury trial and filed an application for probation. After a hearing, the trial court denied such application. Mr. Phillips then elected to have the jury only determine guilt or innocence. The jury found Mr. Phillips guilty and the court assessed punishment at six years confinement in the Texas Department of Corrections. This appeal followed.
The indictment reads in part as follows:
"... that TOM SHIRLY EVANS and JOHNNY RAY PHILLIPS on or about the 4th day of February One Thousand Nine Hundred and Eighty-three, and anterior to the presentment of this indictment, in the County of Jefferson and State of Texas, did then and there intentionally and knowingly deliver by actual transfer to Samuel Lee Henry, Jr., more than two hundred (200) pounds of marihuana but less than two thousand (2,000) pounds, against the peace and dignity of the State.”
Appellant’s first ground of error alleges there exists a fatal variance between the facts proved and the allegation in the indictment, in that the state alleged an actual delivery, but proved a constructive delivery. The second ground of error alleges the evidence is insufficient to sustain a conviction.
In a well presented, well reasoned brief, appellant’s attorney correctly states that the indictment must specify which type of delivery the state will rely upon. Queen v. State, 662 S.W.2d 338 (Tex.Crim.App.1983). Further, the type of transfer alleged must be proved. Davila v. State, 664 S.W.2d 722 (Tex.Crim.App.1984).
In analyzing sufficiency of the evidence the relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential element of the crime beyond a reasonable doubt. Bonham v. State, 680 S.W.2d 815 (Tex.Crim.App.1984). In both direct and circumstantial evidence cases the reviewing court will look at all the evidence in the light most favorable to the verdict. Houston v. State, 663 S.W.2d 455 (Tex.Crim.App.1984).
The question posed by the two grounds of error revolves around the testimony of a police detective who witnessed the transfer.[1] The transfer described by *561 the detective was a direct transfer from the occupants of the van to the occupant of the house. The detective testified the three men were “handing each other what appeared to be garbage bags”, all three of them touched the bags and they appeared to be helping one another. This is an actual transfer. A constructive transfer has been discussed at length in Rasmussen v. State, 608 S.W.2d 205 (Tex.Crim.App.1980) and Daniels v. State, 674 S.W.2d 388 (Tex.App.—Austin 1984, pet. granted). An actual transfer was also defined in Daniels, supra. See and compare Westfall v. State, 663 S.W.2d 664 (Tex.Crim.App.—Corpus Christi 1983, pet. ref'd) which is an actual transfer through the law of parties. The allegations of an actual transfer between Mr. Phillips and Mr. Henry were proven. Ground of error number one is overruled.
The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. Bonham, supra. Further, it is their province to resolve or reconcile conflicts in the testimony. Banks v. State, 510 S.W.2d 592 (Tex.Crim.App.1974). Using the applicable standard of review, we find the evidence sufficient to sustain the conviction. Ground of error number two is overruled.
The final ground of error alleges the court erred in denying Mr. Phillip’s eligibility for probation from the jury.
The evidence showed that Mr. Phillips had been convicted of a federal offense under 21 U.S.C.A. sec. 84-1 (1981 & Supp. 1985) and had been sentenced to five years in the penitentiary which was reduced to one year. Mr. Phillips argues first that under 18 U.S.C.A. sec. 1 (1969) his conviction was a misdemeanor. Secondly, he argues that even if his federal conviction was a felony, he was still eligible for probation under TEX. CODE CRIM.PROC.ANN. art. 42.12 B, sec. 3a(a) (Vernon Supp.1986).
As to the first argument, the burden was on the appellant to prove his eligibility for probation. Baker v. State, 519 S.W.2d 437 (Tex.Crim.App.1975). There was evidence, not complained of here, that the offense for which Mr. Phillips was convicted was a felony under the federal system. Having reviewed the evidence and federal statutes, we reach the same conclusion.
Secondly, having been convicted of a felony in the federal system, we conclude Mr. Phillips was ineligible for probation from a jury. While the Court of Criminal Appeals has not spoken directly on this issue there are analogous holdings. In White v. State, 618 S.W.2d 65 (Tex.Crim.App.1981) the court held that prior federal convictions punishable by imprisonment in the penitentiary were previous felony convictions for enhancement purposes. An even more persuasive case is Watkins v. State, 572 S.W.2d 339 (Tex.Crim.App.1978) which held where a defendant had received an unlimited presidential pardon of his federal conviction, he was, none-the-less, not entitled to probation. This ground of error is overruled. The judgment of the trial court is affirmed.
AFFIRMED.

. Pertinent portions of his direct testimony are as follows:
"Q When that van pulled in did you see some people get out of the van?
"A Yes, I did.
“Q How many people got out of the van?
"A Two.
"Q How did they get out of the van, which part of the van?
“A One, the driver got out on the driver's side, which is the left side of the vehicle. The side rider got out on the right side or the front of the vehicle.
"Q Where did they, what did they do when they got out?
"A Immediately walked up to the back porch. I couldn’t tell if they knocked, went on inside the porch and knocked on the door or what. And then another man came out with them.”
******
"Q Is this with all three of them like right together?
"A Yes.
“Q What did they do after they opened up the side of the van?
“A Started handing each other what appeared to be garbage bags with something in them.
"Q Could you describe to the jury what you mean by garbage bags, what they looked like?
"A Typical darkcolored garbage bags, the kind that people sit out in front of their house with a large amount of garbage in them, plastic.
"Q Were they Hefty or the Glad plastic type?
"A Yes, sir.
“Q Did all three of them touch the bags at one time or another?
"A Yes, sir.
"Q Did they appear to be helping each other?
“A Yes, they were.”
******
“Q Where did they take all the bags?
"A Inside the residence.
"Q Did the people that took the bags, these three people that took all those bags into the residence, did they stay in the residence or what happened then?
"A No, sir. They left real quickly, I would say within a minute or so, after they finished the transaction.
*559 "Q So was this the same two people that went inside the house that came outside the house and got back in the van?
"A The same physical description, yes, sir.
"Q Did just two people get back in the van?
"A Yes, sir.”
* * * * * *
"Q Let’s go back to that van. Now those two occupants, after they got in the van, what was the immediate next thing that happened after they got inside the van?
“A They backed out of the driveway and went back to Lucas. Turned left on Lucas and went to Steelton and turned left again.”
* * * * *
“Q Where did you go?
"A I had to follow the vehicle since we didn’t have anybody else close enough at that time immediately.
"Q Why were you following the van?
"A Because we wanted to stop whoever was in the van and place them under arrest or detention until we verified the information that we had.”
* * * * * *
"Q Det. Van Dorn, how long did you follow that van?
"A I would say that the location from where the house was to where he was stopped, probably a mile to a mile and a half.
"Q You are saying where the van was stopped — apparently the van was stopped. Is that correct?
"A Yes, sir.”
[[Image here]]
"Q Were you there when the van was stopped?
“A Yes, sir.”
* * * * * if
"Q Now the driver, did you see who the driver of the van was?
"A Yes, sir.
"Q Had you seen the driver of the van before?
"A Yes, sir.
"Q Who was the driver of the van?
"A Mr. Evans.
"Q Is that the person who supposedly was the owner of that van?
“A Yes, sir.
"Q Or the person that you have testified about previously?
"A Yes, sir.
“Q The passenger, did you see who the passenger in the van was?
"A Yes, sir.
"Q Do you see the passenger in the van in the courtroom today?
"A Yes, sir, I do.
"Q For purposes of the record, and for the jury, would you describe what that person is wearing in the courtroom.
"A A blue suit, blue shirt, sitting next to counsel.
“Q Basically you have described the Defendant. Is that correct?
"A Yes."
******
"0 Was Samuel Lee Henry the same person that was involved in helping unload that van that you had seen earlier?
"A Yes, sir.
"Q Are you sure about that?
"A I’m sure in my own mind, sir.
"Q In your opinion, who were those three people unloading that van that you have just talked about?
"A Mr. Evans, Mr. Phillips and Mr. Henry.
“Q Why do you believe it was those three people?
"A Due to their physical description.”
******
"Q And was Mr. Phillips in that van?
"A Yes, he was.
"Q Are you positive that Mr. Phillips is the same person that was in the van?
“A Yes, I am.
"Q And the same person that you see here in court today?
“A Yes, sir.”
* * * * * >v
"Q With respect to — was that all of the cars and activity that came and went before the actual warrant was run?
"A Yes, sir.
"0 Now was it under constant surveillance from the time that that van delivered those bags until the time the warrant was run?
"A Yes.
"Q Did you all watch and see if anybody came and went?
"A Yes.
"Q And the only people that came and went were the people in those three cars?
"A Yes, sir.
“Q Now did any of those people in those three cars that came and went after this van unloaded these garbage bags, did any of those people bring any big garbage bags with them into the house?
“A No.
"Q Any of those people take big garbage bags with them when they left?
“A No, sir.”
******
"Q Would it have been possible in your opinion for any of those people in those three cars to have brought any large quantity of marijuana into that house?
"A No, sir.
"Q Why are you saying that? How do you know that?
“A Well, I could see them as they got out of their vehicles the same as I saw the other two individuals.
“Q Were they ever carrying anything — I asked you about garbage bags, were they ever carrying anything that could be a big bundle of anything?
"A No, sir.”
* * * * * *
"Q Inside the house did you all find the marijuana?
"A Yes, sir.
*560 “Q A large quantity of marijuana?
"A Yes, sir.
"Q Approximately how much marijuana did you all find?
"A Several hundred pounds.
"Q How was it packaged?
"A In bales and garbage bags.
"0 Now the garbage bags that you found inside that house, did they look like the garbage bags that Mr. Phillips and Mr. Evans and Mr. Lee were seen with earlier?
"A The same type, sir, yes, sir.
"Q Had anyone else took any garbage bags in there?
"A No, sir.
"Q Was it approximately the same number of garbage bags that were taken into the house?
“A There were — I don’t remember the total that we confiscated but there were more than the total that I counted.
"Q Were those bags open or closed?
"A Some were open, some were closed.
“Q But as far as you are concerned, the garbage bags you all found inside that house are the same or similar to the garbage bags that you saw offloaded?
“A Yes, sir.
“Q In your opinion, were those the same garbage bags?
“A They would have had to have been.”
Pertinent parts of cross-examination are:
"Q You said you saw three people unloading the bags?
"A Yes, sir.
"Q You could not tell who they were, could you?
"A By bodily type only, sir.”
[[Image here]]
"Q You could not identify any of the people involved there, could you?
"A Other than physical descriptions, no, sir.” Pertinent parts of re-direct examination are:
"Q Was there anybody else that was involved there that was arrested that could have unloaded those bags from the van?
"A In my opinion, no, sir.
“Q No one other than Mr. Evans and Mr. Phillips that were arrested in the van?
“A That is true, sir.
"Q Anybody else match that physical description that could have been confused?
"A No, sir.
"Q Anybody else that could have been there at the same time or anything like that?
"A No, sir.
"Q I am going to ask you the same question about Mr. Henry. Was there anyone else that was arrested there or ever involved there at the time that could have been anybody other than Mr. Henry that they delivered those bags to?
"A No, sir.
"Q You are sure it was Mr. Henry that was arrested. Is that correct?
“A Yes, sir.
"Q You are also sure he was the one that was arrested?
"A Yes, sir.
“Q Mr. Henry get out of the van with them whenever they drove up?
"A No, sir.
“0 Just two people got out of the van. Is that correct?
"A Yes, sir.
"Q So apparently Mr. Henry was there at the house. Is that correct?
"A That is correct.
"Q Did Mr. Henry get back in the van with them and leave?
"A No.
"Q How many people in the van when it stopped?
“A Two.
"Q Two people, so whatever was transfered in those bags was delivered to the care, custody and control of Mr. Henry. Is that correct?
"A That is correct.
"Q So in fact, whatever was in those bags was in fact delivered over to Mr. Henry. Is that correct?
“A Yes, sir.
“Q In all honesty, are you saying when they first drove up there and started unloading the van, would you be able in all honesty to say, when I saw them unload that van that was the guy that was unloading the van?
"[DEFENSE COUNSEL]: Your Honor, we ask him to rephrase the question. I have an objection, it is leading.
"THE COURT: Overruled.
"Q Could you tell the jury that at that point when you first saw those people get out of the van and if you had never saw them again positively under oath that that is definitely this man? Could you have said that?
"A At that very instant he got out of the van, I couldn't. But after the transaction of the dope from the van to the house I could.
“Q So at that point you were able to say that was the same person. Is that correct?
“A Yes, sir.
"Q Was that then further substantiated by all the facts that went on that night?
"A Yes, sir.
“Q Would there be any other possible conceivable person it could have been?
"A No, sir.”
Pertinent parts of re-cross examination are:
"Q Just a few more questions. You saw three people unloading the van, did you not?
“A There were at least three people unloading the van, sir.
“Q That at least means there could have been some others?
"A Could have been, yes.
"Q More than three?
"A Yes, sir.
"Q You don’t know who they were?
"A It would have had to have been one of the Davis boys if there was a fourth person.
“Q But you were there watching and you don’t know whether there were three or four?
"A That is correct, sir.”