James E. DANIELS, Appellant,

v.

The STATE of Texas, Appellee.

No. 767–84.

Court of Criminal Appeals of Texas, En Banc.

June 1, 1988.

Charles M. Hineman, on appeal only, Austin, for appellant.

Louis Crump, Dist. Atty., San Saba, Sam Oatman, Asst. Dist. Atty., Llano, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was found guilty by a jury of the offense of unlawful delivery of marihuana. The trial court assessed the punishment at five years' imprisonment. The conviction was based on a violation of the Texas Controlled Substances Act, Article 4476–15, § 4.05(a) and (b)(3), V.A.C.S. (as amended in 1981).[1]

On appeal, inter alia, the appellant contended the trial court erred in overruling his motion to quash the indictment because the term "constructive transfer" was an ambiguous term that did not give notice of the acts charged and violated his right to adequate notice under the federal and state constitutions and the Code of Criminal Procedure. Appellant further contended the trial court committed fundamental error in the charge in allowing the jury to convict on a theory not alleged in the indictment. The Court of Appeals agreed "with both assignments of error" and reversed and remanded with instructions to dismiss the indictment. *Daniels v. State,* 674 S.W.2d 388 (Tex.App.—Austin 1984). We granted the State's petition for discretionary review to determine the correctness of the Court of Appeals' decision. Texas Rules of Appellate Procedure, Rule 200(c)(2).

Briefly, the record shows that Kimberly Hughes, a member of the Austin Organized Crime Unit, worked as an undercover agent-officer in Burnet County at the time of the alleged offense. In early October

---

1. The Court of Appeals reviewed this case pursuant to the 1976 version of the Controlled Substances Act. However, Article 4476–15, § 4.05, supra, was amended by the Legislature in 1981 (Acts 1981, 67th Leg., ch. 268, p. 702, eff. Sept. 1, 1981). It was this version which was in effect at the time of the alleged offense on October 12, 1982. The amendment did not effect the substantive law applicable however. Further comment is therefore unnecessary. Currently see Article 4476–15, § 4.05 (Acts 1983, 68th Leg., p. 2386, ch. 425, § 13, eff. Aug. 29, 1983).

1982, Hughes met appellant in the parking lot of Cochran's Grocery Store and later went to his residence in Marble Falls indicating she wanted to buy drugs. Appellant stated he didn't have any drugs to sell, but according to Hughes, he rolled her a marihuana cigarette and she "simulated" smoking part of it.

On the evening of October 12, 1982, Hughes was with Tim Martinez, James Brooks and James Whited at the Relax Bar I outside Granite Shoals drinking beer. The three men later accompanied Hughes in her car and directed her to appellant's home which she had previously visited. She testified that marihuana was smoked in the car en route to appellant's house and she again simulated smoking a joint.

Upon arrival Brooks entered appellant's house and then returned to the car. Thereafter Hughes related she gave James Whited a $100 bill and he gave her $40 in change. In order to be able to get into the house Hughes insisted she had to use the bathroom, and she accompanied the three men into the house. Upon entering she saw appellant seated on a stool behind the bar and also observed a large white man with blond hair watching television. Hughes proceeded to the bathroom. Upon her return she saw Whited in the kitchen area with a bag of marihuana. He handed the bag to Hughes and asked her if "it looked all right." She responded "Yes." Hughes testified that Whited then "handed my $100 bill plus $15 to James Daniels (appellant)."

The group then left the house. The bag of marihuana was apparently split and Hughes received one half which the next day she delivered to Chemist Bob Urbanovsky of the Austin Police Department, who testified that he analyzed and determined that the substance given him by Hughes was in fact marihuana weighing 10.8 grams or 0.38 ounces.

On cross-examination Hughes admitted she was not present when the marihuana was "delivered." She did not see where the marihuana came from because the first time she observed the bag of marihuana it was in the possession of Whited.

Hughes and Urbanovsky were the only State's witnesses. Hughes indicated in her testimony that Whited, Brooks and Martinez all had charges filed against them.

At the close of the State's case-in-chief appellant's motion for an instructed verdict of "not guilty" was denied.

Charles Eugene Van Buskirk for the defense testified he was at appellant's house on the occasion in question, and was watching television when the group entered the house. He stated that appellant was leaving the house at the very time to go get a six pack of beer for which he (Van Buskirk) had given appellant money. Van Buskirk recalled that Hughes, upon entering, went directly to the bathroom and that in her absence Brooks and Whited asked Juanita Armstrong, who was present, about some "pot," and they bought some marihuana from Armstrong, who placed the money "underneath the bar." He later observed a purse behind the bar and thought it belonged to Armstrong. It was Van Buskirk's testimony that Hughes was in the bathroom during this transaction, and that after Hughes came out Brooks and Whited showed her the "pot," that Whited then rolled a marihuana cigarette and "a few of them" were smoking it when the appellant returned with the beer. Appellant asked the group to leave as he had to work the next morning and the group left.

Juanita Armstrong, when called by the defense, testified that she was present at the time in question, and that the appellant was not present when the alleged transaction took place. As to her participation in the transaction, she took the Fifth Amendment and was permitted to do so without objection. On cross-examination she related she was living with appellant at the time, and reiterated that appellant, on the occasion in question, had gone to get beer for Van Buskirk. Clifton Daniels, appellant's cousin, testified he was present, that appellant left the house as the group entered, and that the "deal" made was with Armstrong.

The pertinent portions of the Texas Controlled Substances Act in effect at the time of the instant offense provided:

"Sec. 4.05(a) Except as authorized by this Act, a person commits an offense if he knowingly or intentionally delivers marihuana.

"(b) An offense under Subsection (a) of this section is:

\*   \*   \*   \*   \*   \*

"(3) a felony of the third degree if the amount of marihuana delivered is four ounces or less but more than one-fourth ounce[.]"

"Sec. 1.02

"(8) 'Deliver' or 'delivery' means the actual or constructive transfer from one person to another of a controlled substance or drug paraphernalia, whether or not there is an agency relationship. For purposes of this Act, it also includes an offer to sell a controlled substance or drug paraphernalia."

As can be seen from the definition of "deliver" or "delivery" in said § 1.02(8), three types of "delivery" are contemplated: (1) an actual transfer; (2) a constructive transfer; and (3) an offer to sell. See *Queen v. State*, 662 S.W.2d 338, 340 (Tex.Cr.App.1983); *Ferguson v. State*, 622 S.W.2d 846, 848 (Tex.Cr.App.1980); *Conaway v. State*, 738 S.W.2d 692, 694 (Tex.Cr.App. 1987).

The indictment presented in this case charged in pertinent part that on or about October 12, 1982, "... James E. Daniels ... did then and there unlawfully, intentionally and knowingly deliver to Kimberley Hughes by contructive (sic) transfer a quantity of marihuana in excess of one-fourth ounce[.]"

In his amended motion to quash appellant urged three reasons why the indictment in this case is defective. First, that it does not set forth the offense charged in plain and intelligible words; second, it fails to allege the manner and means whereby the alleged acts were committed; and third, that "constructive transfer" is an ambiguous and conclusory legal term which is insufficient to give him proper notice of the offense charged and the acts constituting the offense.

The trial court overruled the motion to quash. On appeal the Court of Appeals concluded the trial court erred, although it noted that if the appellant had been charged with "actual transfer," the allegation tracking the statute would have been sufficient. *Daniels*, supra at 392.

An accused's right to notice of the accusation against him is premised upon constitutional principles, both federal and state. The Sixth Amendment to the Constitution of the United States provides in part:

"In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation...." [2]

Article I, § 20 of the Texas Constitution states in part:

"[In all criminal prosecutions the accused] shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof."

There are also pertinent Code of Criminal Procedure provisions. See Articles 21.-02(7), 21.03, 21.04, 21.11 and 21.12, V.A.C. C.P.

The defendant is thus entitled to notice of the acts or omissions he is alleged to have committed. *Gorman v. State*, 634 S.W.2d 681 (Tex.Cr.App.1982).

When considering a motion to quash, it is insufficient to say the accused knew with what offense he was charged; rather the question presented is whether the face of the instrument sets forth in plain and intelligible language sufficient information to enable the accused to prepare his defense. *McManus v. State*, 591 S.W.2d 505 (Tex.Cr. App.1979); *Haecker v. State*, 571 S.W.2d 920 (Tex.Cr.App.1978). The motion to quash should be granted where the language in the charging instrument concerning the defendant's conduct is so vague or indefinite as to deny the defendant effective notice of the acts he allegedly committed. *Haecker v. State, supra*. Cf. *Adams v. State*, 707 S.W.2d 900 (Tex.Cr.App.1986).

**2.** The Sixth Amendment is made applicable to the states by virtue of the Fourteenth Amendment. See *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

While all essential elements of an offense must be alleged in the indictment, an indictment drafted in the language of the statute creating and defining an offense is ordinarily sufficient. *Beck v. State*, 682 S.W.2d 550, 554 (Tex.Cr.App.1985), and cases there cited.

It is a rare exception when an indictment drafted in the language of the penal statute is legally insufficient to provide an accused with notice of the offense charged. *Beck*, supra, at 554; *Marrs v. State*, 647 S.W.2d 286 (Tex.Cr.App.1983); *May v. State*, 618 S.W.2d 333 (Tex.Cr.App.1981); *Thomas v. State*, 621 S.W.2d 158 (Tex.Cr. App.1980); *Phillips v. State*, 597 S.W.2d 929 (Tex.Cr.App.1980); *Few v. State*, 588 S.W.2d 578, 583 (Tex.Cr.App.1979); *Parr v. State*, 575 S.W.2d 522 (Tex.Cr.App.1978); *Boney v. State*, 572 S.W.2d 529 (Tex.Cr. App.1978). See also *Moreno v. State*, 721 S.W.2d 295 (Tex.Cr.App.1986); *Castillo v. State*, 689 S.W.2d 443 (Tex.Cr.App.1984).

■ Although an indictment which tracks the language and terms of the statute is ordinarily sufficient, if the statutory language is not completely descriptive, so that particularity is required to afford the defendant notice as required, merely tracking the language of the statute may be insufficient. *Terry v. State*, 471 S.W.2d 848 (Tex.Cr.App.1971); *Beck*, supra, at 554. See also *Haecker v. State*, 571 S.W.2d 920 (Tex.Cr.App.1978).

■ The State, however, is not required to plead evidentiary facts which are not essential to provide the required notice to the accused. *Beck*, supra. In *Thomas*, supra (opinion on rehearing), we stated that usually when the terms and elements in the indictment are statutorily defined, the definitions are essentially evidentiary and need not be further alleged in the indictment. See also *May*, supra. Thus, unless a fact is essential for notice to the accused, the in-

dictment need not plead the evidence relied upon by the State. *Phillips*, supra; *Smith v. State*, 502 S.W.2d 133 (Tex.Cr.App.1973); *Cameron v. State*, 401 S.W.2d 809 (Tex.Cr. App.1966).

In *Ferguson v. State*, 622 S.W.2d 846 (Tex.Cr.App.1980), the indictment, in pertinent part, alleged that appellant on or about April 25, 1975, did "unlawfully, intentionally and knowingly deliver to Jerry Powell, a controlled substance, namely Heroin." Ferguson filed a motion to quash contending the indictment failed to allow how the indictment failed to allow how the heroin was delivered, what type of delivery upon which the State would rely, and such was necessary for him to prepare his defense. The motion to quash was overruled. On appeal after conviction Ferguson claimed such action was error. The State argued that the term "delivery" was statutorily defined and there was no need to specify which type of delivery was involved; that Ferguson had received adequate notice.

This Court reversed Ferguson's conviction, holding that the motion to quash should have been granted because the indictment, while using the statutorily defined word "deliver," failed to specify which legal theory or theories (types) of delivery contained within that definition that the State was going to rely upon in its proof. The indictment thus failed to give Ferguson's precise notice of the nature of the accusation against him, and would not enable him to plead any judgment in bar of any other prosecution for the same offense because of the lack of certainty.[3]

In its interpretation of *Ferguson* this Court in *Queen v. State*, 662 S.W.2d 338, 340 (Tex.Cr.App.1983), stated:

"We observe then that *Ferguson* stands for the proposition that an indictment for the delivery of a controlled sub-

---

3. *Ferguson* was not unlike *Drumm v. State*, 560 S.W.2d 944 (Tex.Cr.App.1977), where the State alleged the defendant Drumm drove his motor vehicle while his license was suspended under Article 6687b, § 24, V.A.C.S. Said § 24 of the statute provided five different ways in which an accused's driver's license could have been suspended. Defendant, by motion to quash, sought a specific allegation as to which subsection of § 24 the State would rely. This Court held that the trial court erred in overruling the motion to quash and stated that in order for the defendant to prepare his defense, he was entitled to notice of the particular type of suspension or suspension upon which the State was going to rely.

stance must specify *type* or *types* of delivery *the State* would rely upon and *need not allege the precise manner by which a specified type of delivery was performed.*" (Emphasis of "type" or "types" in original. Other emphasis added.)[4]

It would appear clear that if "actual transfer" had been alleged in the instant indictment instead of "constructive transfer" there would be no merit to appellant's claim. The Court of Appeals in the instant appeal so concluded as has this Court. See *Queen v. State*, 662 S.W.2d 338 (Tex.Cr. App.1983); *Conaway v. State*, 738 S.W.2d 692 (Tex.Cr.App.1987). See and cf. *Esterline v. State*, 707 S.W.2d 171, 177–178 (Tex. App.—Corpus Christi 1986) P.D.R. ref'd.

Is there to be a different rule when the term "constructive transfer" is specified in the indictment as the type of delivery? It is observed that the terms "actual transfer," "constructive transfer" and "offer to sell" are not defined by the Legislature for the purpose of the Controlled Substances Act, the Penal Code or elsewhere.

In *Whaley v. State*, 717 S.W.2d 26, 30, 31 (Tex.Cr.App.1986), this Court only recently wrote:

"The Code Construction Act, Sec. 311.-011(a), V.T.C.A. prescribes that words and phrases are to be read in context and construed according to the rules of grammar and common usage. This Act is applicable to the Penal Code, see V.T. C.A., Penal Code Sec. 1.05, but is not applicable to the Controlled Substances Act. See V.T.C.A., Government Code Sec. 311.002, supra. However, Chapter 312 of the Government Code, which immediately follows the Code Construction Act in the 1986 pamphlet, is specifically applicable to all civil statutes, which includes the Controlled Substances Act. V.T.C.A., Government Code, Sec. 312.-001. The Government Code, Sec. 312.-002(a), prescribes that words be given their ordinary meaning. The Government Code, Sec. 312.002(b), prescribes that words of art, or particular subject matter, are to be used accordingly."

■ Thus, when statutory words are not defined, they are ordinarily given their plain meaning without regard to distinction between construction of penal laws and laws on other subjects, unless the act clearly shows that they were used in some other sense. *Campos v. State*, 623 S.W.2d 657, 658 (Tex.Cr.App.1981); *Sanford v. State*, 492 S.W.2d 581, 582 (Tex.Cr.App.1973).

In Black's Law Dictionary, Fifth Edition (1979), at pp. 385, 386, we find "delivery" defined:

"The act by which the res or substance thereof is placed within the actual or constructive possession or control of another. . . .

"What constitutes delivery depends largely on the intent of the parties. It is not necessary that delivery should be manual delivery . . . (*Jones v. Young*, 539 S.W.2d 901, 905 (Tex.Civ.App.—Texarkana 1976). . . .

---

**4.** In *Queen*, supra, the indictment, in part, alleged the defendant

". . . did then and there unlawfully knowingly and intentionally delivery a usable quantity of marihuana to Ben Neel in an amount more than one-fourth ounce and for remuneration by transferring the said marihuana into a motor vehicle within the care and control and custody of the said Ben Neel and by transferring the said marihuana to the actual custody of the said Ben Neel."

The court observed, as Queen urged, that the indictment did not use the phrase "actual transfer" or "constructive transfer," but noted that where there is not a material difference between the statutory language and the language in the indictment, an indictment which alleges all of the requisites elements of the offense will not be found to be deficient simply because it fails to precisely track the language of the statute. *Rincon v. State*, 615 S.W.2d 746 (Tex.Cr. App.1981). See also *King v. State*, 675 S.W.2d 514 (Tex.Cr.App.1984); *Oliver v. State*, 692 S.W. 2d 712 (Tex.Cr.App.1985).

Concluding the *Queen* indictment alleged both an actual and constructive transfer, the *Queen* Court stated:

"Thus, as alleged in the indictment, appellant effectuated a second 'constructive' transfer to Neel. We find that the instant indictment clearly alleged the appellant delivered the marihuana by utilizing both an actual and constructive transfer as contemplated by the statute, and we further note the indictment is supported by the evidence."

"Actual delivery consists in giving real possession to the vendee or his servants or special agents who are identified with him in law and represent him. It is a formal immediate tradition of the property to the vendee.

"Constructive delivery is a general term, comprehending all those acts which, although not truly conferring a real possession of the thing sold on the vendee, have been held, by construction of law, equivalent to acts of real delivery."

Ballentine's Law Dictionary, 3rd Ed. (1969) at p. 329 defines "delivery" as

"a handing over; the surrender of possession to another

\*   \*   \*   \*   \*   \*

"For some purposes, a delivery is accomplished by nothing more than making a thing available to another, placing it within his reach, *notwithstanding there is no actual handing of the thing from one person to another.*" (Emphasis supplied.)

Webster's Third New International Dictionary (Unabridged Ed. 1961) defines "constructive delivery" as "... a delivery not accompanied by an actual transfer of possession of the property delivered yet recognized as having been intended by the parties and as sufficient in law...."

■ In the instant case the indictment charged the act of delivery, which is statutorily defined and which is ordinarily sufficient, and further to meet the specificity of *Ferguson* the indictment alleged the type of delivery as "constructive transfer." Although "constructive transfer" is not statutorily defined, it is to be given its common meaning. See V.T.C.A., Government Code, § 312.002(a). We conclude the trial court properly overruled the motion to quash the indictment. Such a motion should be granted *only* where the language concerning the defendant's conduct is so vague or indefinite as to deny the defendant effective notice of the acts he allegedly committed. *Thomas v. State,* 621 S.W.2d 158, 163 (Tex.Cr.App.1980); *Lindsay v. State,* 588 S.W.2d 570 (Tex.Cr.App.1979); *Cruise v. State,* 587 S.W.2d 403 (Tex.Cr.App.1979);

*Amaya v. State,* 551 S.W.2d 385 (Tex.Cr. App.1977).

We do further note that the meaning of "constructive transfer" has been addressed by this Court but *not* in the context of a motion to quash an indictment for failure to allege sufficient facts to put the defendant on notice of such meaning.

In *Rasmussen v. State,* 608 S.W.2d 205 (Tex.Cr.App.1980), a delivery of marihuana case, the conviction was reversed on original submission for failure to give the defendant's requested charge on the law of parties. On rehearing the State urged the defendant was a primary actor and a charge on parties was not required based on the contention the defendant had "constructively delivered" the marihuana.

The opinion on rehearing noted that the meaning of "constructive transfer" as a method or type of delivery pursuant to Article 4476–15, § 1.02(8), V.A.C.S., had not been previously addressed. Observing that the Texas Controlled Substances Act was derived from the Uniform Controlled Substances Act, this Court reviewed decisions from other states with statutes based on the Uniform Act.

In *State v. Ellis,* 161 W.Va. 40, 239 S.E. 2d 670 (1977), the Supreme Court of Appeals, after setting forth their pertinent statutes, stated:

"We interpret a 'constructive transfer' to be the transfer of a controlled substance either belonging to an individual or under his control by some other person or agency at the instance or direction of the individual accused of such constructive transfer."

The *Rasmussen* Court also reviewed *State v. Guyott,* 195 Neb. 593, 239 N.W.2d 781 (1976), and *State v. McHorse,* 85 N.M. 753, 517 P.2d 75 (Ct.App.1973), which upheld the transfers in those cases to be constructive transfers and sufficient to sustain the convictions.

The *Rasmussen* Court then simply stated:

"The common element of these cases is that prior to delivery the substance in-

volved was directly or indirectly under the defendant's control."

It applied that "common element" to Rasmussen and found that his actions did not constitute constructive delivery so as to make him a primary party to the offense.

The *Rasmussen* Court did not, repeat, did not adopt the definition of "constructive transfer" as set out in *Ellis*, although later cases seem to be confused on this point.[5] All it did was to glean a common element from the out-of-state cases mentioned in the opinion.

In *Davila v. State*, 664 S.W.2d 722, 724 (Tex.Cr.App.1984), the defendant was charged with delivery of heroin by "constructive transfer." Noting *Rasmussen*, the Court stated:

"The evidence presented in the instant case fails to show that appellant had direct or indirect control of the contraband prior to its delivery, and does not show that the contraband was delivered by [a third party] at the instance or direction of appellant."

In *Whaley v. State*, 717 S.W.2d 26, 31 (Tex.Cr.App.1986), the Court stated:

"This Court, in *Rasmussen v. State*, 608 S.W.2d 205 (Tex.Cr.App.1980), noted that 'constructive transfer' had not been defined in Texas. We went on to follow holdings of courts in other states which specifically defined 'constructive transfer'. *Rasmussen*, at 209–10. *Rasmussen* has been subsequently cited with approval. In *Davila v. State*, 664 S.W.2d 722, 15 724 (Tex.Cr.App.1984) we said:

" '... We followed other jurisdictions and interpreted a constructive transfer to be the transfer of a controlled substance either belonging to the defendant or under his direct or indirect control, by some other person or manner at the instance or direction of the defendant....' " [citing *Rasmussen*, supra]

See also *Queen v. State*, 662 S.W.2d 338, 340–341 (Tex.Cr.App.1983). Thus, it appears that 'constructive transfer' has ac-

quired a particular meaning. However, under the circumstances of this case, we feel any error in not giving a specific definition was harmless.

Actually, *Rasmussen*, *Davila* and *Whaley* dealt with only one aspect of constructive transfer.

■ In *Gonzalez v. State*, 588 S.W.2d 574, 577 (Tex.Cr.App.1979), this Court held that constructive transfer requires the transferor at least be aware of the existence of the ultimate transferee before delivery. This does not mean that the transferor need know the identity of or be acquainted with the ultimate recipient. It only requires that when the State alleges constructive transfer to an alleged ultimate recipient that the accused must have contemplated that his initial transfer would not be the final transaction in the chain of distribution.

In an opinion concurring in the reversal in *Gonzales*, at p. 578, Judge Dally stated:

"The evidence simply does not show that appellant *knowingly* made a delivery of heroin to Galvan [as alleged]. There is nothing in the record to show that appellant *knew* that he was making a transfer of heroin, either actual or constructive, to Galvan. There is no evidence that the appellant had ever met Galvan or that he knew about Galvan's role in the sale. The testimony of Galvan would have supported a conviction of the appellant either for possession of heroin or for the delivery of heroin to Montoya, but the appellant was not charged with these offenses."

This knowledge requirement was reaffirmed in *Sheffield v. State*, 623 S.W.2d 403 (Tex.Cr.App.1981), a post *Rasmussen* case.

From these cases we can glean that within the meaning of "constructive transfer" the following rules are applicable:

1. Prior to an alleged delivery, the transferor must have either direct or in-

---

**5.** See *Henderson v. State*, 681 S.W.2d 173, 174 (Tex.App.—Houston [14th] 1984); *Pulgarin v. State*, 635 S.W.2d 195 (Tex.App.—Houston [1st]

1982), no P.D.R. See also the language in *Whaley v. State*, 717 S.W.2d at 31 (Tex.Cr.App.1987).

direct control of the substance transferred. *Rasmussen,* supra.

2. The transferor must know of the existence of the transferee. *Gonzales,* supra.

None of these cases outside the context of a motion to quash calls for a different result that earlier reached but supports the conclusion that the court properly overruled the motion to quash.

The State also urges in its petition for discretionary review that there was no fundamental error in the court's charge as found by the Court of Appeals. That court found that the charge permitted the jury to convict on a theory not alleged in the indictment which alleged delivery by "constructive transfer."

The charge informed the jury that the appellant was "charged by indictment with the offense of delivery, *by constructive transfer,* of more than one-fourth ounce of marihuana...." (Emphasis added.)

Abstractly the court then instructed the jury:

"Our law provides that a person commits an offense if he knowingly or intentionally delivers marihuana.

"By the term 'deliver' as used in this charge, is meant *the actual or constructive transfer* from one person to another of marihuana, whether or not there is an agency relationship." (Emphasis added.)

The court also charged on the law of parties, and then in applying the law to the facts instructed the jury:

"Now, if you believe from the evidence beyond a reasonable doubt that the Defendant, James E. Daniels, either by his own conduct knowingly and intentionally delivered more than one-fourth ounce of marihuana to Kimberly Hughes on October 12, 1982 in Burnet County, Texas, or acting with intent to promote or assist the commission of the offense aided James E. Whited to commit the offense charged, as defined above, and that the said James E. Whited did on October 12, 1982 deliver more than one fourth ounce of marihuana to Kimberly Hughes in Burnet County, Texas, you will find the Defendant guilty.

"If you do not so believe, or if you have a reasonable doubt thereof, you will find the Defendant not guilty."

The appellant objected to the instructions giving the law of parties, but did not object to the instructions authorizing conviction upon the theory of actual transfer.

The Court of Appeals viewed the charge as permitting the jury to convict the appellant only for actual delivery either by his own conduct or as a party to actual delivery by Whited, and that it did not authorize conviction upon constructive delivery, the only theory charged in the indictment. The court also reversed on this basis citing *Cumbie v. State,* 578 S.W.2d 732, 733 (Tex. Cr.App.1979), for the proposition that an omission from the charge of the allegation in the indictment was fundamental error. *Cumbie,* however, was later overruled to the extent of any conflict as to error in the court's charge requiring automatic reversal. *Almanza v. State,* 686 S.W.2d 157, 174 (Tex.Cr.App.1985) (Opinion on rehearing).

The *Almanza* standard of review for an alleged error in the jury's charge reads as follows:

"If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of defendant,' which means no more than that there must be *some* harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.

"On the other hand, if no proper objection is made at trial and the accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'

"In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argu-

ment of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza,* supra, at 171.

Although this Court has frequently remanded the cause to the Court of Appeals to make a factual determination and apply the *Almanza* standard, particularly in pre-*Almanza* cases, we have not always done so. See *Kucha v. State,* 686 S.W.2d 154, 155 (Tex.Cr.App.1985); *Bonfanti v. State,* 686 S.W.2d 149 (Tex.Cr.App.1985).

■ The appellant timely objected to the inclusion of the law of parties in the charge, but his point of error is that fundamental error occurred when the court submitted only the theory of actual delivery which was not charged in the indictment. We shall consider the point of error as alleged. In considering the entire charge, the evidence, the contested issues, and weight of the probative evidence, there can be no question that the error in the charge was so egregious and created such harm that he has not had a fair and impartial trial. For this reason alone the conviction must be reversed.

■ There is more, however. The evidence to sustain the conviction in this case is insufficient. Hughes, the undercover agent, testified she did not know where the marihuana in question came from. She saw it for the first time in the possession of Whited. Although the appellant took money from Whited in Hughes' presence, there was .no showing that appellant had direct or indirect control over the marihuana in question. See *Rasmussen,* supra. Further, the indictment alleged that appellant "intentionally and knowingly" delivered the marihuana to Hughes by constructive transfer. The evidence shows that Hughes did not receive her share of marihuana until after she and Whited, Brooks and Martinez left appellant's house. There is no showing that appellant knew that Hughes was to be the ultimate transferee or recipient of all or any part of the marihuana. The knowledge requirement of *Gonzlaes,* supra, was not met, even if it could be said appellant had direct or indirect control over the contraband. There is nothing in the record to show that appellant *knew* that he was making a transfer of marihuana, either actual or constructive, to Hughes. See *Gonzales,* supra (concurring opinion).

Viewing the evidence in the light most favorable to the jury's verdict, no rational trier of the facts could have found all the essential elements of the offense .charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Hudson v. State,* 675 S.W.2d 507 (Tex.Cr.App.1984); *Burks v. State,* 693 S.W.2d 932 (Tex.Cr.App.1985).

Under the mandate of the Supreme Court of the United States in *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), a judgment of conviction must be set aside if the evidence is insufficient to support a finding of guilty, and an order of acquittal ordered.

Our reasons for reviewing the sufficiency of the evidence are those set forth in *Howeth v. State,* 645 S.W.2d 787 (Tex.Cr. App.1983).

Since the Court of Appeals was correct as to the fundamental error in the court's charge, the judgment of that court is affirmed as to the reversal of the conviction, but reformed to show that an order of acquittal is also to be entered due to the lack of sufficient evidence to sustain the conviction.

McCORMICK and WHITE, JJ., concur.

CAMPBELL, J., would "concur in the result only because I would remand to the Court of Appeals for reconsideration consistent with this Court's opinion in *Adams,* supra."

MILLER, J., dissents to the disposition of point of error number one and agrees with the disposition of point of error number two.