TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00619-CR






David Paul Frost, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF LLANO COUNTY, 33RD JUDICIAL DISTRICT


NO. 4868, HONORABLE GUILFORD L. JONES, III, JUDGE PRESIDING






 A jury found appellant David Paul Frost guilty of two counts of aggravated
robbery. See Tex. Penal Code Ann. § 29.03 (West 1994). Upon the jury's assessment of
punishment, the district court sentenced appellant to twenty years' confinement for one count and
ten years' confinement for the other, with the sentences to run concurrently. Appellant presents
seven issues on appeal. We will reverse and remand.


FACTUAL BACKGROUND

 In the late afternoon of June 2, 1998, Deborah Hunt and her friend Joy Larson went
to "the Slab" to go swimming. The Slab is a low-water crossing on the west side of the Llano
River at Ranch Road 3404, near the town of Kingsland. At around twilight, Nathan Orman and
David Wishert arrived at the Slab. Orman and Larson knew each other, and the four began
talking. 

 After the group of four had been talking for awhile and it had turned dark, a group
of seven teenage boys, including appellant, walked by. (1) Wishert recognized one boy in the group,
Troy Folsom, and talked with him for a few minutes. Two more boys from the group of seven,
Thomas Cardwell and Ronald Wesser, came up to Wishert and Folsom. At some point, the group
of seven discussed their plans for Orman and Wishert. Testimony about the plans varied. Four
members of the group of seven testified--one member testified that the group planned to beat up
Wishert and Orman; another member testified that there was also talk of stealing Wishert's car
and raping the girls; another testified that the group had no plans to harm the four but only wanted
to drink alcohol with them; (2) yet another member testified they planned to rob Wishert and Orman. 
Several members of the group testified that they saw appellant get a shovel from a Bronco driven
by Klayton Kilburn, one of the group of seven. Folsom left the Slab because he did not want any
part in harming Wishert, whom he knew. Cardwell and Wesser left along with Folsom.

 After Folsom, Cardwell, and Wesser departed, the two girls left in their vehicle
to use the telephone (3) and purchase some cigarettes at a nearby service station. They were gone
for about five to fifteen minutes.

 When the girls left, Wishert and Orman were sitting in the front seat of Orman's
car, a T-top Mustang with the top open. The remaining four of the seven boys--appellant, Kilburn,
Chad Wiggins, and Tyrone Leach--approached the Mustang. Orman was tuning his radio when
he was hit over the head with a shovel. Orman did not see who hit him. Wishert and others,
however, identified appellant as the one who hit Orman with the shovel. The group of four
knocked the windows out of the Mustang, slashed the tires, and stomped the car's hood. 
Appellant hit Orman in the head with the shovel a second time. Wishert, meanwhile, was being
attacked with either a rock or stick. Wishert pushed back on the seat, the seat broke, and he fell
into the back seat. Wishert was then beaten in the back with a shovel. Wishert testified that while
he did not see who hit him with the shovel, he did see appellant with the shovel both immediately
before and after he was beaten. Both victims testified that during the attack, someone from the
group asked for their wallets, (4) and both gave their wallets to the attackers. The attackers then
yelled at the victims to get out of the car, opened the car door, and pulled Orman out. At about
this time, the girls came back from the store. Orman saw the headlights and ran toward the on-coming vehicle. Wishert saw Orman get out of the car and start running. Appellant and two
others began chasing Orman. Wishert got out of the car and started to follow Orman to help his
friend, but the fourth boy stepped in front of him. Wishert hit this fourth boy and then ran in the
opposite direction from Orman to get help.

 The vehicle, however, did not stop for Orman. Hunt, who was driving, testified
that she did not stop because she and Larson did not recognize Orman, who was "covered with
something," later determined to be blood. The three boys, including appellant, were still chasing
Orman and pushing him off the road. Hunt circled back, and again Orman ran out in front of her,
but again she did not recognize him. Hunt and Larson drove up the road to call 911 on Hunt's
cellular phone. It was then that Larson realized that the person who had run out in front of them
was Orman. They went back to find him. They found Orman in the road, covered with blood. 
Orman said he had just been attacked with a shovel and that Wishert was missing. (Orman did
not see Wishert run away from the scene of the attack.) By this time, the four attackers had fled
in Kilburn's Bronco. About five or ten minutes later, the police arrived.

 Officers Bill Boyd and Ted Christopher of the Llano County Sheriff's Department
arrived on the scene shortly after midnight. Hunt, Larson, and Orman were at the scene. 
Orman's head and upper torso were covered in blood, and he was talking to Larson, saying that
he had been hit with a shovel and that Wishert was missing. Boyd observed that the Mustang's
glass had been knocked out; two tires had been slashed; there was blood on the driver's side and
rocks scattered throughout the vehicle. EMS arrived about twenty minutes after the police and
began tending Orman. Eventually, Wishert was located not far from the scene. Wishert had run
to a family friend's house where he also had called the police. Both Wishert and Orman were
taken to the hospital.

 Orman was the more severely injured of the two and suffered three deep scalp
lacerations and multiple abrasions and contusions. One of these lacerations penetrated the galea,
the covering over the skull itself. Orman required 24 staples and two stitches to repair the injuries
to his head. Orman also received a CAT scan to determine whether he had suffered a skull
fracture or brain injury. At trial, about one year after the attack, Orman had a scar from his head
injuries. Wishert was treated for a hematoma on his head and multiple abrasions and contusions. 
The police recovered the shovel at the scene, and DNA tests revealed Orman's blood on the
shovel. Witnesses testified that the shovel was used in a manner capable of causing death or
serious bodily injury. Appellant did not testify during the guilt/innocence stage of his trial.

 The jury found appellant guilty of aggravated robbery of both Orman and Wishert. 
See Tex. Penal Code Ann. § 29.03. Upon the jury's assessment of punishment, the district court
sentenced appellant to twenty years' imprisonment for the aggravated robbery of Orman and ten
years for the aggravated robbery of Wishert with the sentences to run concurrently. In seven
issues, appellant complains of his conviction on both counts and his punishment.


DISCUSSION

 The penal code provides that a person commits robbery if


in the course of committing theft . . . and with intent to obtain or maintain control
of the property, he:


(1) intentionally, knowingly, or recklessly causes bodily injury to another; or


(2) intentionally or knowingly threatens or places another in fear of imminent
bodily injury or death.



Id. § 29.02 (West 1994). Bodily injury is defined as "physical pain, illness, or any impairment
of physical condition." Id. § 1.07(a)(8) (West 1994).


 A person commits aggravated robbery if he commits robbery and he:


(1) causes serious bodily injury to another;


(2) uses or exhibits a deadly weapon; or


(3) causes bodily injury to another person or threatens or places another person
in fear of imminent bodily injury or death, if the other person is:


 (A) 65 years of age or older; or


 (B) a disabled person.



Id. § 29.03. As Wishert and Orman are under 65 and not disabled, the only two possible
aggravating elements are that appellant either caused serious bodily injury or used or exhibited
a deadly weapon in the commission of the offense. A deadly weapon is "anything that in the
manner of its use or intended use is capable of causing death or serious bodily injury." Id.
§ 1.07(a)(17)(B) (West 1994). Serious bodily injury is injury that "creates a substantial risk of
death or that causes death, serious permanent disfigurement, or protracted loss or impairment of
the function of any bodily member or organ." Id. § 1.07(a)(46) (West 1994).

 Count one of the indictment against appellant charges that on or about June 2,
1998, appellant did:


PARAGRAPH A


 . . . while in the course of committing theft and with the intent to obtain
and maintain control of property, to-wit: a wallet, intentionally and knowingly
threaten and place NATHAN ORMAN in fear of imminent bodily injury and
death by using and exhibiting a deadly weapon, to-wit: A SHOVEL, that in the
manner of its use and intended use was capable of causing death and serious bodily
injury,


PARAGRAPH B


 . . . while in the course of committing theft and with the intent to obtain
and maintain control of property, to-wit: a wallet, intentionally, knowingly, and
recklessly cause bodily injury to NATHAN ORMAN by striking the head of
Nathan Orman with a shovel, and the Defendant did then and there use and
exhibit a deadly weapon, to-wit: A SHOVEL, that in the manner of its use and
intended use was capable of causing death and serious bodily injury . . . .



(Italics added.) Count two of the indictment reads the same as count one except that the named
victim is David Wishert and in Paragraph B, the grand jury alleges that appellant struck the torso
of Wishert as opposed to the head. The indictment thus charges appellant under both theories of
robbery--causing bodily injury and threatening another--but only alleges one aggravating
element--using or exhibiting a deadly weapon.

 The jury was charged as follows: (5)


 now, if you find . . . [appellant] . . . while in the course of committing
theft of property, and with intent to obtain and maintain control of said property,
did either (a) intentionally or knowingly cause serious bodily injury to [Orman and
Wishert] by hitting [them] with a shovel, or (b) intentionally or knowingly threaten
or place [Orman and Wishert] in fear of imminent bodily injury or death, then you
will find [appellant] guilty.



The jury was given the option of finding appellant guilty or not guilty of only aggravated robbery. 
In his third issue, appellant argues that the charge is defective because it instructed the jury to
return a verdict for aggravated robbery if it found that the State proved only the elements of
robbery. The charge allows the jury to find appellant guilty of aggravated robbery if it finds that
he intentionally or knowingly threatened or placed the victims in fear of imminent bodily injury
or death. Threatening conduct is an element of robbery but is not an aggravating element. See
Tex. Penal Code Ann. §§ 29.02, .03. When a charge authorizes a conviction for conduct that is
not an offense as well as for conduct that is an offense, the trial court commits error. See Cumbie
v. State, 578 S.W.2d 732, 733-35 (Tex. Crim. App. 1979); (6) Castillo v. State, 7 S.W.3d 253, 258-59 (Tex. App.--Austin 1999, pet. ref'd). No objection was made to the charge at trial. The State
concedes error but argues that under Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1984)
(op. on reh'g), appellant has not shown egregious harm.

 Before conducting a harm analysis, however, we observe that the court's charge
contains additional error, albeit unassigned. See Rezac v. State, 782 S.W.2d 869, 870 (Tex.
Crim. App. 1990); Carter v. State, 656 S.W.2d 468, 468-70 (Tex. Crim. App. 1983); Rodriguez
v. State, 939 S.W.2d 211, 219 (Tex. App.--Austin 1997, no pet.) (court of appeals may, in its
discretion, address errors not briefed). The indictment charges that the aggravating factor was
the use or exhibition of a deadly weapon. The jury charge makes no mention of this aggravating
factor and instead substitutes the aggravating factor of causing serious bodily injury, which was
not charged by the indictment. We hold this to be error. See Daniels v. State, 754 S.W.2d 214,
223 (Tex. Crim. App. 1988) (reversible error when indictment charged that appellant delivered
marihuana by constructive transfer and jury was charged with only actual delivery); Cumbie, 578
S.W.2d at 733-35 (error when charge authorizes conviction on theory not alleged in indictment). 
The court's charge allowed the jury to convict appellant of aggravated robbery if the jury found
either that (1) appellant engaged in conduct that is not alleged in the indictment--causing serious
bodily injury--or (2) appellant engaged in conduct that is not aggravated robbery--threatening or
placing the victims in fear.

 Having determined that the district court erred in his charge to the jury, we must
now determine if sufficient harm was caused by the error to require a reversal, despite the lack
of an objection. See Hutch v. State, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). A jury-charge error must be reviewed for harm according to the standards set out in Almanza. See 686
S.W.2d at 171. Under Almanza, if no proper objection is made at trial, appellant must claim
"fundamental" error and will obtain a reversal only if the error creates such harm that appellant
has been deprived of "a fair and impartial trial--in short, 'egregious harm.'" Almanza, 686
S.W.2d at 171. The actual degree of harm must be assayed in light of the entire jury charge; the
state of the evidence, including the contested issues and weight of probative evidence; the
argument of counsel; and any other relevant information revealed by the record of the trial as a
whole. See id.

 At the beginning of the trial, the indictment, which charged aggravated robbery by
use or exhibition of a deadly weapon, was read to the jury. In its opening statement, the State
said that it would present evidence that appellant used the shovel as a deadly weapon, i.e., used
it in a manner capable of causing death or serious bodily injury. The State focused on the injuries
that the victims actually suffered to bolster its argument that the shovel was a deadly weapon. 
Appellant's opening statement was a general denial of the offense. During the course of the trial,
the jury heard from several witnesses, including police and medical personnel, that the shovel was
used in a manner capable of causing death or serious bodily injury. (7) The jury also heard evidence
about the victims' injuries. Near the close of evidence, the court offered the proposed charge to
the parties, and appellant objected to it on the grounds that the charge should contain several
lesser included offenses. (8) The charge was read to the jury. In its closing argument, the State
argued that the shovel had been used as a deadly weapon and that the victims suffered serious
bodily injury. Appellant, in addition to advancing other defenses, argued that the victims had not
suffered serious bodily injury; appellant did not argue that the shovel had not been used as a
deadly weapon.

 The seriousness of the victims' injuries was a contested issue throughout the trial. 
Whether the victims suffered serious bodily injury as defined in the penal code is contested. The
injuries to Wishert, which consisted only of bruises and cuts, are especially questionable. (9) It is
entirely plausible that, faced with the erroneous charge, the jury could not agree on whether
appellant caused serious bodily injury to the victims but could have easily concluded that appellant
threatened the victims or placed them in fear. The jury was not charged to consider whether
appellant used the shovel as a deadly weapon. Although the evidence is sufficient to support a
jury finding of use of a deadly weapon, we refuse to so find as a matter of law. We are also
troubled because in its closing argument, the State argued that in Wishert's case there was no
question that he was at least threatened with the shovel, thus in essence arguing to the jury that
because an element of robbery was satisfied, appellant should be convicted of aggravated robbery. 
The jury was never given the option of convicting appellant of aggravated robbery as alleged in
the indictment. The indicted crime was not submitted to the jury as a possible option under which
to convict.

 The State, without citing authority, argues that appellant was not egregiously
harmed by the charge error. The State points out that the charge "correctly sets forth Aggravated
Robbery with a Deadly Weapon in describing the offense alleged in the indictment." The State
is correct to the extent that the charge correctly defines robbery and aggravated robbery. But the
application paragraphs of the charge (10) are clearly in error, and the portion of the charge that
applies the law to the facts of the case determines if the charge is fundamentally defective. See
Hudson v. State, 675 S.W.2d 507, 512 (Tex. Crim. App. 1984); Bui v. State, 964 S.W.2d 335,
347 (Tex. App.--Texarkana 1998, pet. ref'd).

 The State also argues that there was "substantial" and "uncontroverted" evidence
that appellant used a deadly weapon in the offense, as alleged in the indictment. However, "[a]
charge authorizing conviction on a theory not alleged in the indictment is not necessarily free from
egregious error, even though the evidence is sufficient to support the allegations of the
indictment." Lang v. State, 698 S.W.2d 223, 225 (Tex. App.--Dallas 1985, no pet.). We further
note that this case is unlike those cases in which the jury is presented with two theories, only one
of which is alleged in the indictment, and the appellate court determines that there is no egregious
harm because there is overwhelming evidence of the correctly submitted theory. (11) In this case,
there is no correctly submitted theory; the jury was given two wrong choices.

 We hold that under the facts of this case, appellant was egregiously harmed by the
erroneous jury charge. Cf. Daniels, 754 S.W.2d at 223 (egregious harm when indictment charged
that appellant delivered marihuana by constructive transfer and jury was charged with only actual
delivery); Steward v. State, 830 S.W.2d 771, 774 (Tex. App.--Houston [14th Dist.] 1992, no pet.)
(egregious harm when indictment charged burglary, jury was charged with both burglary and
improper lesser included offense of theft, and jury convicted on theft). Ross v. State, although
pre-Almanza, was quoted with approval in Almanza and held that when a jury charge authorized
a conviction under only one theory, which was not charged in the indictment, there was
"fundamental" error that was "calculated to injure the rights of the appellant to the extent that he
has not had a fair and impartial trial." 487 S.W.2d 744, 745 (Tex. Crim. App. 1972). 
Appellant's third issue is sustained.

 In his first and second issues, appellant argues that we should render a judgment
of acquittal because the evidence is legally insufficient to support the jury's finding that the
victims suffered serious bodily injury. To determine the legal sufficiency of the evidence to
support a criminal conviction, the question is whether, after viewing all the evidence in the light
most favorable to the verdict, any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979);
McCain v. State, 14 S.W.3d 300, 307 (Tex. Crim. App. 2000). The State and appellant join issue
over whether the Court should evaluate the sufficiency of the evidence under the jury charge
actually given or a hypothetically correct jury charge. See Malik v. State, 953 S.W.2d 234 (Tex.
Crim. App. 1997). We do not decide this issue, however, because we hold that the evidence is
sufficient under either charge. There is clearly sufficient evidence, under a hypothetically correct
jury charge, that appellant used the shovel as a deadly weapon. And under the charge actually
given to the jury, there is sufficient evidence that appellant threatened or placed the victims in fear
of imminent bodily injury or death. We overrule appellant's first and second issues.

 In his remaining four issues, appellant asserts error in the district court's refusing
to instruct the jury on a lesser included offense; failing to inform the jury, at the punishment
phase, of appellant's parole eligibility; and excluding evidence of the punishment received by the
other boys involved in the assault. Appellant also urges ineffectiveness of his trial counsel. 
Because resolution of these issues is not necessary to the outcome of this appeal, we do not reach
them. See Tex. R. App. P. 47.1.


CONCLUSION

 Because we hold that the harm to appellant by virtue of the errors in the district
court's jury charge was egregious, we reverse the judgment and remand this cause to the district
court.



 


 Lee Yeakel, Justice

Before Justices Jones, Yeakel and Patterson

Reversed and Remanded

Filed: August 10, 2000

Publish
1. Witnesses indicated that the entire group of people, including the original four, were in
their late teens or early twenties. Everyone in the group of seven boys was under the age of 17
except for appellant, who was 17.
2. Hunt, Larson, Orman, and Wishert had not consumed any alcohol during this event, but
the group of seven had been drinking.
3. Hunt had a cellular phone but used it only for emergencies.
4. Kilburn testified that the victims offered their wallets to the assailants.
5. The jury was charged in two separate counts, one for Orman and one for Wishert. The jury
was also charged on the law of parties, which is not at issue in this appeal.
6. Cumbie has been overruled to the extent it held that "fundamental" charge error required
automatic reversal. See Almanza v. State, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984) (op. on
reh'g). The Cumbie categories of charge error, however, remain intact although not every error
will require reversal under Almanza. See Castillo v. State, 7 S.W.3d 253, 258-59 (Tex.
App.--Austin 1999, pet. ref'd).
7. This evidence was adduced from testimony generally consisting of a question--is a shovel,
when used as a club, an object capable of causing death or serious bodily injury?--coupled with
an affirmative response.
8. The district court overruled this objection.
9. Neither the doctors nor the victims ever testified, either directly or indirectly, that the
victims' injuries created a substantial risk of death or caused death, serious permanent
disfigurement, or protracted loss or impairment of the function of any bodily member or organ. 
We do not hold that the evidence of serious bodily injury is factually or legally insufficient but
merely point out that the evidence is not conclusive.
10. See supra p. 7.
11. In Castillo v. State, the indictment alleged aggravated robbery by threat and use of a deadly
weapon. See 944 S.W.2d 440, 441 (Tex. App.--Houston [14th Dist.] 1997, no pet.). The jury
was charged with aggravated robbery, robbery by threat (a proper lesser included offense), and
robbery by causing bodily injury (an erroneous submission). See id. at 441-42. The jury found
the defendant guilty of robbery. See id. at 441. The court held there was no egregious harm
because the evidence was sufficient to convict on robbery by threat, a properly submitted theory. 
See id. at 443-44.


 In Fowler v. State, the indictment alleged aggravating kidnaping, with the two aggravating
factors listed as terrorizing the victim and using the victim as a hostage. See 958 S.W.2d 853,
857 (Tex. App.--Waco 1997), aff'd, 991 S.W.2d 258 (Tex. Crim. App. 1999). The charge
included a third, uncharged aggravating factor (using a deadly weapon), but the court concluded
there was no egregious harm because there was "overwhelming" evidence of the two properly
submitted aggravating factors. See id. at 858-59.


 In Mattox v. State, the indictment alleged aggravated assault by causing bodily injury (with
a deadly weapon as the aggravating factor). See 874 S.W.2d 929, 934 (Tex. App.--Houston [1st
Dist.] 1994, no pet.). The jury was charged with both theories of assault--causing bodily injury
or threatening bodily injury (in addition to the correct aggravating element). See id. at 934-35. 
The court found no egregious harm because there was "uncontradicted" evidence that the victim
sustained bodily injury. See id. at 935.



uding evidence of the punishment received by the
other boys involved in the assault. Appellant also urges ineffectiveness of his trial counsel. 
Because resolution of these issues is not necessary to the outcome of this appeal, we do not reach
them. See Tex. R. App. P. 47.1.


CONCLUSION

 Because we hold that the harm to appellant by virtue of the errors in the district
court's jury charge was egregious, we reverse the judgment and remand this cause to the district
court.



 


 Lee Yeakel, Justice

Before Justices Jones, Yeakel and Patterson

Reversed and Remanded

Filed: August 10, 2000

Publish
1. Witnesses indicated that the entire group of people, including the original four, were in
their late teens or early twenties. Eve