NO. 07-03-0349-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JUNE 30, 2004

_____


MUHAMMAD SALEEM JIWANI, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 252ND DISTRICT COURT DISTRICT COURT OF JEFFERSON COUNTY;

NO. 87522; HONORABLE LAYNE WALKER, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

On May 14, 2003, following his plea of not guilty, appellant Muhammad Saleem Jiwani was convicted by a jury of the intentional inducement of Arlis Carl Garrett to assign and transfer a right to claim a lottery prize of the value of less than ten thousand dollars,

a third degree felony offense[1] and the trial court assessed a sentence of two years confinement probated for two years. With two points of error, appellant challenges the legal sufficiency of the evidence to support his conviction. We affirm.

On July 2, 2002, the victim, Arlis Garrett, and his friend, Perry Haynes entered the Rebel Food Mart in Evandale, Texas to purchase something cold to drink. With only $2 to his name, Garrett bought a $.79 soda and a $1 scratch-off lottery ticket. On the drive back to his friend's house, Garrett scratched off the ticket to discover it was a $3000 winner. Garrett and Haynes returned to the Rebel Food Mart to redeem the ticket. The clerk indicated they would have to go to the lottery commission office in Beaumont to cash the ticket.

Garrett and Haynes immediately departed for Beaumont. When they arrived, they were unable to locate the lottery commission office, so they stopped at a convenience store to ask for directions.[2] Upon entering the store, Garrett and Haynes observed appellant, who was working as the cashier, and another unidentified man standing behind the counter. When Garrett asked for directions to the lottery commission office, appellant queried whether he had a winning lottery ticket. When Garrett replied affirmatively, appellant requested to "take a look at it." After examining the ticket, appellant told Garrett that there

---

[1]Tex. Gov't. Code Ann. § 466.310(a)(1) (Vernon 1998) entitled "Certain Transfers of Claims."

[2]The convenience store was owned by appellant's brother-in-law.

2

was no need to go to the lottery commission because he could cash the ticket at the store. Also, he told Garrett, however, that he would have to take out 32 percent of the winnings for taxes. Appellant assured Garrett that if he redeemed the ticket at the lottery commission, the same amount would be deducted for taxes. Garrett accepted appellant's offer and received from him $2040 in exchange for the $3000 ticket.

When Garrett and Haynes returned to Evandale, they stopped once again at the Rebel Food Mart, where Garrett visited with the clerk who had sold him the winning ticket. Garrett relayed to him his encounter with appellant. As a result of his conversation with the clerk, Garrett contacted the lottery commission and filed a complaint against appellant. Following an investigation by that agency, a Jefferson County Grand Jury indicted appellant for certain transfers of claims.

Ronald Hill, a man who did odd jobs at the convenience store where appellant worked, testified at trial that around the fourth of July, appellant asked him to accompany him to the lottery commission office "to go cash a lottery ticket for him." When they arrived at the office, Hill presented his driver's license and social security card along with the $3000 winning lottery ticket to Esterlyn Dugan, a lottery commission employee. After Hill filled out the information requested on the back of the lottery ticket, Dugan handed him a check for $3000. When appellant and Hill left the lottery commission office, Hill tendered the check to appellant, and appellant paid him $100.

Dugan testified that the maximum amount a retailer can pay out for a winning lottery ticket was $599. She further averred that the lottery commission does not withhold income tax on tickets worth less than $5000. For winning tickets over $5000, Dugan explained that the commission withheld 27 1/2 percent. According to Dugan, the withholding percentage had never been as high as 32 percent. Additionally, Dugan told the jury that an individual redeeming a ticket worth more than $600 would be reported to the Internal Revenue Service based upon the social security number the individual produced for identification. Thus, "if someone named Ronald Hill came in to [her] office and redeemed a lottery ticket worth $3000, that $3000 in winnings would be reported to his Social Security number."

With his first point of error, appellant contends the evidence is legally insufficient to establish that he induced Garrett to assign or transfer his right to claim a prize. By his second point, appellant maintains the trial court erred in denying his motion for an instructed verdict. With both contentions, we disagree. At the outset, we note that a challenge to the trial court's denial of a motion for instructed verdict is, in effect, a challenge to the legal sufficiency of the evidence to support the conviction. Williams v. State, 937 S.W.2d 479, 482 (Tex.Cr.App. 1996). In our review, we consider all the evidence presented at trial, both from the State and the defense, in the light most favorable to the verdict. Cook v. State, 858 S.W.2d 467, 470 (Tex.Cr.App. 1993). That is, our review of the sufficiency of the evidence is not limited to the evidence presented before an appellant's motion for instructed verdict is made at the end of the State's case in chief. Bellah v. State, 415 S.W.2d 418, 420 (Tex.Cr.App. 1967). If the evidence is sufficient to sustain the

4

conviction, the trial court did not err by denying the motion for instructed verdict, and we need not determine whether the evidence was insufficient at the time the motion was made. Madden v. State, 799 S.W.2d 683, 686 (Tex.Cr.App. 1990). Thus, we will consider appellant's points contemporaneously.

In reviewing the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict, and ask whether a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). In our review, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740 ( Tex.Cr.App. 1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 44 U.S. at 319. In measuring the sufficiency of the evidence to sustain a conviction, we measure the elements of the offense as defined by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.Cr.App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not necessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id*.

A person commits the offense of certain transfers of claims, as defined in the State Lottery Act,[3] if he, as pertinent to this appeal, induces another person to assign or transfer a right to claim a prize. Tex. Gov't Code Ann. § 466.310(a)(1) (Vernon 1998). The State Lottery Act does not define the term induce. Furthermore, the parties have not directed us, and our research has failed to reveal, any other provisions of the Government Code or of the Penal Code which furnish a definition for it.[4] *See id*. § 466.002. When words are not defined in a statute, they are ordinarily given their plain meaning unless the statute clearly shows that they were used in some other sense. Daniels v. State, 754 S.W.2d 214, 219 (Tex.Cr.App. 1988). The parties suggest the appropriate definition by which to gauge the sufficiency of the evidence is that contained in Black's Law Dictionary. According to Black's, induce means ". . . to influence to an act or course of conduct . . . ." Black's Law Dictionary 775 (6th ed. 1990). Because there is no evidence in the statute to suggest that the term induce was "used in some other sense," and since the parties concur in its use, we will accept, for purposes of this appeal, the Black's definition.

---

[3]The short title of the chapter at issue is the State Lottery Act. Tex. Gov't Code Ann. § 466.001.

[4]Appellant's attorney at trial objected "that the use [sic] of the term 'induced' is not defined [in the charge], that it's vague and ambiguous, that it violates, under the Texas Constitution, Article 1, Sections 10, 15, 19, under the United States Constitution, 5th, 8th, and 14th Amendments." On appeal, however, appellant assigns no error to the trial court's decision not to include a definition. Rather, his only challenge is to the sufficiency of the evidence to establish inducement.

Viewing all the evidence in the light most favorable to the verdict, we conclude there is legally sufficient evidence to support a verdict based upon certain transfer of claims. According to Garrett and Haynes, their sole purpose for entering appellant's convenience store was to ask for directions to the lottery commission office. Yet, when Garrett made his inquiry, appellant queried whether he had a winning ticket. Appellant then asked to see the ticket and volunteered there was "no need to go on to the Texas Lottery" because he could cash it at the store. Appellant explained that he would withhold 32 percent for taxes and cash the ticket. When Garrett expressed shock over that charge, appellant assured him that the lottery commission would withhold the same. Garrett testified that appellant "kept telling us [Garrett and Haynes] over and over, you know, 'There's no need taking it down there because they're going to charge you the same thing, 32 percent.'" Garrett said he believed appellant and that based upon what appellant told him, he was induced to "go ahead and give that ticket to [him] and receive that money." Haynes corroborated Garrett's account and added that appellant suggested that by cashing the ticket at the store, "it would save [them] a trip trying to find the lottery office."

During the course of the investigation by the lottery commission, appellant told Marvin Collins, the investigator assigned to handle the case, that Garrett "came into his store, didn't have a license and said he wanted to redeem this ticket but he didn't have the proper identification to do so." Appellant further explained that he told Garrett he was going to charge him $1000 to cover the cost of taxes. According to Collins, appellant's offer was "in and of itself, a violation of the Government Code." In addition, Collins agreed with the

7

State's assertion that the offer "was an inducement, even if he [Garrett] didn't have identification . . . that he [appellant] would offer to do something he probably shouldn't do, he would redeem the ticket for a fee."

On appeal, appellant urges that he "truly believed, that he as an individual, and not as a retailer could mutually agree with another individual to purchase this lotto ticket, which is, in fact, what Appellant did." He further contends he had no intention to defraud Garrett. The jury, however, was the sole judge of the credibility of the witnesses and the weight to be given their testimony, and it was also the exclusive province of the jury to reconcile the conflicts in the evidence. Tex. Code Crim. Proc. Ann. arts. 36.13 & 38.04 (Vernon 1979 & 1981); Wesbrook v. State, 29 S.W.3d 103, 111 (Tex.Cr.App. 2000), *cert. denied*, 532 U.S. 944, 121 S.Ct. 1407, 149 L. Ed.2d 349 (2001). By its verdict, the jury decidedly chose to disregard appellant's version of the facts and to credit, instead, the account relayed by Garrett and Haynes. Furthermore, the jury must have rejected appellant's claim that he had no intent to defraud Garrett, and to accept, rather, Collins's assertion that appellant's offer to cash the ticket for a fee was, in and of itself, an inducement, and Garrett's contention that he authorized appellant to cash his ticket based upon the representations appellant made to him. Finally, appellant's protestations about his lack of intent are belied by the deceptive manner in which he redeemed the ticket shortly after obtaining it from Garrett. In short, the jury resolved any conflicts in the evidence against appellant–this it was entitled to do. Thus, having heard the preceding evidence, a rational trier of fact could have reasonably concluded that appellant induced, that is, " influenced to an act or course

8

of conduct," Garrett to transfer his right to claim the $3000 lottery prize.  Appellant's first and second points of error are overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice