COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-08-008-CR

 

 

JANET KAY AHMAD                                                            APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

       FROM COUNTY
CRIMINAL COURT NO. 10 OF TARRANT COUNTY

 

                                              ------------

 

                                OPINION ON REHEARING

 

                                              ------------

 

After reviewing Appellant Janet Kay Ahmad=s motion
for rehearing, we deny the motion.  We
withdraw our May 28, 2009 opinion and judgment and substitute the following.  Our ultimate disposition is unchanged.

                                            Introduction








Appellant appeals from her conviction for
possession of a hoax bomb.  In seven
points, she argues that limitations barred prosecution because the first of two
indictments failed to toll limitations; 
that the evidence is legally and factually insufficient to prove that
the bombCa World
War II practice bombCwas a Ahoax@ bomb;
that the trial court erred by reopening the evidence to allow the State to
prove its venue allegations; and that the indictment failed to sufficiently
notify her of the charges against her. 
We affirm.

                                       Factual
Background

Southridge Hills is a residential subdivision of
Arlington, Texas.  During World War II,
military aviators used the then-undeveloped Southridge Hills area as a practice
bombing range, dropping small, cast iron Apractice
bombs.@  The practice bombs each contained a Aspotting
charge@
consisting of a 10-gauge shotgun blank and chemicals designed to fire on impact
and expel a puff of smoke so that an observer could see where the bomb
landed.  The practice bombs were not
designed to explode.

After the Southridge Hills subdivision was
developed in the late 1990s, homeowners began to discover the practice bombs on
their property.  The Army Corps of
Engineers circulated fliers warning residents about the practice bombs, and the
subdivision=s developer instructed
homeowners to call 9-1-1 if they found a bomb. 
Between 2004 and 2005, the Corps discovered and removed 241 practice
bombs in Southridge Hills.








Appellant, a San Antonio resident, is the
president of Homeowners for Better Builders (AHOBB@), the
mission statement of which is A[t]o
support a meaningful, long[-]term solution to the problem of the unregulated
home building industry.@ 
On January 26, 2002, Appellant, Crystal McCartneyCa real
estate agentCand Thea LewisCa
Southridge Hills residentCwent to Southridge Hills to
distribute fliers promoting an upcoming meeting to be hosted by Appellant
concerning the practice bombs.

McCartney testified that after the women drove
around the neighborhood looking at houses under construction, Appellant said
that Ashe
wanted to look for a bomb, to see if she could find one of the bombs.@  Appellant and McCartney drove to an empty
lot.  Five to ten minutes later,
Appellant said she had found a bomb.

At Appellant=s
request, McCartney called 9-1-1 and told the dispatcher that they had found a
bomb.  McCartney testified that she
believed she was dealing with an emergency. 
Later, said McCartney, Appellant told her that the bomb was one she had
found at an earlier date, and McCartney believed that Appellant placed the bomb
where she claimed to have found it on January 26 for the sake of
publicity.  Appellant concedes that she
did not, in fact, find the practice bomb at that location but Aplanted@ it
there herself.








Andrew Leonard, who lived in a house adjacent to
the lot where Appellant found the bomb, testified that he saw Appellant, McCartney,
and Lewis looking around on the vacant lot. 
Leonard became suspicious of the women=s intent
when he saw Lewis, whom he knew to be involved in litigation with the developer
over the practice bombs, so he continued to watch them.  He saw Appellant  retrieve a shovel and another object from her
vehicle, put the object in her pocket, and return to the lot.  He said Appellant then moved some dirt with
the shovel, reached into her pocket, and placed something on the ground.  Suspecting that something was amiss, Leonard
called to his wife to see what was happening, and she began to videotape the
women.  Leonard testified that Appellant
did not appear scared as though she had been dealing with a dangerous
bomb.  Leonard himself considered the
practice bombs not dangerous because he had attended several Corps of Engineers
meetings and had conducted Aextensive
research@ on such
devices.

Arlington Police Officer Jessie Minton was
dispatched to the scene of the incident. 
Officer Minton stated that he discovered a practice bomb protruding from
the soil.  He testified that although the
soil in the lot was sticky, black mud, the practice bomb was dry and rusty, and
the soil on it did not match the mud in the lot.  He suspected that the bomb had been
deliberately planted within a few minutes of his arrival at the scene.  He did not consider the bomb dangerous.  He testified that the device was Anot
explosive@ but Alook[ed]
like a bomb.@








Officer Jack Gariota testified that he assisted
Officer Minton and discovered the bomb=s tail
fin protruding from the ground.  Officer
Gariota stated that he had conducted online research concerning practice
bombs.  He testified that he believed the
bomb had deteriorated after decades of exposure to moisture and opined that it
was inert and was not a threat, and he was not afraid to hold it.  He also believed that the device had been
moved from its original place of discovery to the vacant lot.  He recalled that home owners who had found
similar devices had been Apretty concerned@ and
avoided them as much as possible.

Teresa Solano, a homeowner in the Southridge
Hills subdivision, testified that notices she received from the Army Corps of
Engineers and the subdivision developer described the bombs as Apractice
bombs,@ not Ahoax
bombs.@  She stated that these notices advised
residents to immediately contact the fire department or police department upon
discovery of a practice bomb.

Carl Ford, a supervisor in the Army Corps of
Engineers= hazardous waste and military
munitions group, testified that the device Appellant found was a MK-23 practice
bomb.  Ford considers practice bombs
dangerous because A[t]hey can very easily hurt or
injure somebody if . . . mishandled.@  Ford stated that the Corps excavated 241
practice bombs from the subdivision A[t]o
protect the public@ from Aexplosive
hazards.@








                                     Procedural
Background

On August 12, 2003, a grand jury returned a two‑count
indictment charging Appellant with tampering with and fabricating
evidence.  Appellant moved to quash the
indictment, and the State moved to dismiss it for failure to state an
offense.  The indictment was dismissed on
May 26, 2004.  On July 8, 2004, a grand
jury returned a second indictment, this time alleging one count of making a
false report and one count of possessing a hoax bomb.  The indictment contained a tolling paragraph
asserting that the conduct charged in the second indictment was the same
conduct that had been charged in the first indictment.

On January 8, 2008, a jury acquitted Appellant of
the false-report count but convicted her for the hoax-bomb count.  The trial court assessed punishment of a
$4,000 fine and 180 days in jail but suspended imposition of the sentence and
placed Appellant on community supervision for twelve months.  Appellant filed a combined motion for new
trial and for arrest of judgment, which were overruled by operation of law.  Appellant then filed this appeal.








This is Appellant=s third
trip to this court.  See Ahmad
v. State, 158 S.W.3d 525 (Tex. App.CFort
Worth 2004, pet. ref=d) (Ahmad I); Ex parte
Ahmad, No. 02‑05‑00338‑CR, 2007 WL 80013 (Tex. App.CFort
Worth January 11, 2007, pet. ref=d) (not
designated for publication) (Ahmad II). 
In Ahmad I, Appellant attempted to appeal the trial court=s denial
of her motion to dismiss the second indictment as barred by limitations.  158 S.W.3d at 526.  We dismissed the appeal for want of
jurisdiction.  Id. at 527.  In Ahmad II, Appellant appealed the
trial court=s denial of her petition for
writ of habeas corpusCagain related to Appellant=s
limitations and tolling argumentsCand we
affirmed the denial.  2007 WL 80013, at *
1, 4.

                                             Discussion

I.                  
Limitations
and Tolling

In
her first two issues, Appellant argues that the trial court erred by denying
her motion to quash the indictment and her combined motion in arrest of
judgment and for new trial because the State filed its second indictment after
the two‑year statute of limitations expired.  Appellant=s argument has three components.  First, she argues that the first indictment
did not toll limitations with regard to the second indictment because the first
indictment failed to allege an offense. 
Second, she argues that the first indictment did not toll limitations
with regard to the second indictment because the two indictments alleged
different conduct.  Third, she argues
that the second indictment=s tolling paragraph was
insufficiently specific to relate back to the first indictment.








A.              
Preservation
of limitations issues

Before
turning to the merits of Appellant=s limitations arguments, we must address the State=s argument that Appellant waived her
issues by failing to request a jury instruction on limitations.  The State relies on Tita v. State, 267
S.W.3d 33 (Tex. Crim. App. 2008), but Tita does not support the State=s argument.  In that case, different grand juries returned
five indictments against Tita.  Id.
at 34B35. 
Tita moved to dismiss the last indictment as barred by limitations, the
trial court denied the motion, and the State brought Tita to trial on the last
indictment.  Id. at 35.  When the State rested on its case in chief
and again at the close of all evidence, Tita moved for a directed verdict based
on limitations; the trial court denied both motions.  Id. at 35B36. 
On appeal, Tita argued that the trial court erred by failing to dismiss
the indictment and that the evidence presented at trial was legally
insufficient to support his conviction because the State failed to prove that the
offense occurred within the applicable limitations period.  Id. at 36.

With
regard to Tita=s sufficiency argument, the court of
criminal appeals held that Tita failed to preserve the issue for review by
failing to request a jury instruction on limitations, id. at 38, and the
State relies on this holding to support its waiver argument in this case.  Specifically, the court stated as follows:








The record reflects that, at the guilt stage of trial,
appellant moved twice for an instructed verdict of acquittal, but he never
requested a jury instruction on the statute of limitations defense.  Under those circumstances, the State was not
obligated to prove that its prosecution was not limitations-barred.

 

Id. at 39.  Unlike Tita, Appellant does not argue that
the evidence was insufficient to prove that the offense occurred within the
limitations period.  Thus, the State=s reliance on this part of Tita
is misplaced.  Further, the court of
criminal appeals considered on the merits Tita=s other issue, that is, whether the trial court erred by
failing to dismiss the indictment as barred by limitationsCthe same issue Appellant raises in
this caseCdespite Tita=s failure to request a jury
instruction on limitations.  Id.
at 37B38. 
We therefore reject the State=s argument that Appellant waived her limitations issues by
failing to request a jury instruction on limitations.

B.               
Standard
of review








We
review a trial court=s denial of a motion to quash an
indictment de novo because the sufficiency of an indictment is a question of
law.  Lawrence v. State, 240
S.W.3d 912, 915 (Tex. Crim. App. 2007), cert. denied, 128 S. Ct. 2056
(2008); State v. Moff, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004).  De novo review is appropriate because this
question of law does not turn on the credibility and demeanor of a witness, and
thus, the trial court was in no better position to deny the motion.  See Moff, 154 S.W.3d at 601; Mungin
v. State, 192 S.W.3d 793, 794 (Tex. App.CHouston [1st Dist.] 2006, no pet.).

Conversely,
we review a trial court=s denial of motions in arrest of
judgment and motions for new trial for an abuse of discretion.  Charles v. State, 146 S.W.3d 204, 208
(Tex. Crim. App. 2004); Hawkins v. State, 910 S.W.2d 176, 178 (Tex. App.CFort Worth 1995, no pet.).  A trial court abuses its discretion when no
reasonable view of the record could support the trial court=s ruling.  Webb v. State, 232 S.W.3d 109, 112
(Tex. Crim. App. 2007); Charles, 146 S.W.3d at 208.  We view the evidence in the light most
favorable to the trial court=s ruling and substitute our judgment
only if the decision was arbitrary or unreasonable.  Webb, 232 S.W.3d at 112.

We
therefore review the trial court=s rulings on Appellant=s motion to quash and motion in arrest of judgment/motion for
new trial under both the de novo and abuse of discretion standards.

C.              
The
indictments

The
first indictment, returned on August 12, 2003, alleged as follows:








On or about the 26th day of January, 2002, [Appellant]
did intentionally or knowingly, make, present, or use, a thing, to-wit:  a training bomb, which she buried that day
. . . with knowledge of its falsity . . . [and] knowing that an
official proceeding was pending or in progress . . . .[1]

 

Appellant moved
to quash the first indictment for failing to state an offense.  The State conceded the issue and filed its
own motion to dismiss the indictment, which the trial court granted on May 26,
2004.

The
grand jury returned a second indictment on July 8, 2004, alleging as follows:

[O]n or about the 26th day of January 2002,
[Appellant] did . . . intentionally or knowingly, initiate,
communicate, circulate, or broadcast, a report of a present, past or future
other emergency, to-wit: that a bomb was located in a residential development
. . . . 

 

Count two: And it is further presented . . .
that [Appellant] . . . did then and there knowingly possess a hoax
bomb with the intent to use the hoax bomb to make another believe that the hoax
bomb was an explosive or incendiary device, or with intent to cause alarm or
reaction of any type by an official of a public safety agency or volunteer
agency organized to deal with emergencies.

 

Tolling paragraph: And I do further present in and to
said court that heretofore, on the 6th day of August, 2003, a complaint was
duly filed in the 213th Criminal District Court of Tarrant County, Texas,
charging said defendant with an offense arising out of the same conduct.








D.              
Tolling
effect of defective first indictment

Appellant
argues that the first indictmentCwhich the State moved to dismiss because it failed to state
an offenseCwas defective and did not toll
limitations with regard to the second indictmentCwhich the grand jury returned more than two years after the
incident in question.  Possession of a
hoax bomb is a Class A misdemeanor subject to the two‑year statute of
limitations.  See Tex. Penal Code
Ann. ' 46.08(b) (Vernon 2003); Tex.
Code Crim. Proc. Ann. art. 12.02 (Vernon 2005).








A
limitations period is suspended or tolled during the pendency of a charging
instrument, and the time between filing and dismissal of a charging instrument
that is rendered invalid Afor any reason@ is not computed in the limitations
period.  Tex. Code Crim. Proc. Ann. art.
12.05(b)‑(c) (Vernon 2005).  The
legislature enacted article 12.05 to overcome the traditional rule that invalid
indictments will not toll the limitations period in the absence of a statute so
holding.  Vasquez v. State, 557
S.W.2d 779, 784 (Tex. Crim. App. 1977), overruled on other grounds, Proctor
v. State, 967 S.W.2d 840 (Tex. Crim. App. 1998).  For tolling purposes, A[i]t makes no difference whether the
initial indictment is faulty or valid.@  State v. Hall,
794 S.W.2d 916, 919 (Tex. App.CHouston [1st Dist.] 1990), aff=d, 829 S.W.2d 184 (Tex. Crim. App. 1992) (en
banc).  Consequently, a defective
charging instrument will toll limitations under article 12.05(b) for a
subsequent indictment when both indictments allege the same conduct, act, or
transaction.  Hernandez v. State,
127 S.W.3d 768, 774 (Tex. Crim. App. 2004).

Appellant
further argues that the first indictment is not merely defective; she argues
that it is no indictment at all, and therefore did not toll limitations,
because it failed to allege an offense. 
The Texas constitution requires that an indictment allege that (1) a
person (2) committed an offense; without both of those elements, the charging
instrument is not an indictment.  Teal
v. State, 230 S.W.3d 172, 179 (Tex. Crim. App. 2007).[2]  The proper test to determine if a charging
instrument alleges Aan offense@ is whether the allegations in it are
clear enough that one can identify the alleged offense.  Id. at 180.  Stated another way: Can the trial court (and
appellate courts who give deference to the trial court=s assessment) and the defendant
identify what penal code provision is alleged? 
Id.








Appellant
contends that the first count of the first indictment alleged tampering with
evidence in a civil lawsuit, which Appellant claims is not an offense.  We agree that the first count alleged
tampering with evidence in a civil lawsuit, but we disagree with Appellant=s claim that such tampering is not an
offense.  Penal code section 37.09
prohibits tampering with evidence if the person knows that Aan investigation or official
proceeding is pending or in progress.@  Tex. Penal Code Ann. ' 37.09 (Vernon Supp. 2008).  An official proceeding is Aany type of administrative,
executive, legislative, or judicial proceeding that may be conducted before a
public servant.@ 
Id. ' 1.07(a)(33) (Vernon Supp.
2008).  The definition of Aofficial proceeding@ does not limit the term to criminal
proceedings.  See id.  APublic servant@ includes a Aperson who is authorized by law . . .
to hear or determine a cause or controversy@Cin other words, a civil judge.  Id. ' 1.07(a)(41)(C); see Lebleu v. State, 192 S.W.3d 205,
213 (Tex. App.CHouston [14th Dist.] 2006, pet. ref=d) (holding evidence sufficient to
sustain conviction for retaliation against public servant when public servant
in question was civil district judge presiding over a civil dispute between
defendant and defendant=s ex-wife).  While criminal prosecutions for tampering with
evidence in civil lawsuits are rare, they are not unheard of.  See, e.g., LeJune v. State,
No. 09-98-037-CR, 1999 WL 160674, at *1 (Tex. App.CBeaumont March 24, 1999, no pet.)
(per curiam) (not designated for publication) (affirming conviction for
tampering with evidence in a child custody case).








Appellant
also arguesCfor the first time in her reply briefCthat the State is judicially estopped
from arguing on appeal that the first indictment alleged an offense because in
the trial court, the State moved to dismiss the first indictment for failing to
state an offense.  Judicial estoppel precludes
a party who successfully maintains a position in one proceeding from afterwards
adopting a clearly inconsistent position in another proceeding to obtain an
unfair advantage.  Ferguson v. Bldg.
Materials Corp., No. 08-0589, 2009 WL 1901639, at *1 (Tex. Jul. 3, 2009)
(per curiam); see Schmidt v. State, 278 S.W.3d 353, 358 (Tex.
Crim. App. 2009) (A[The] equitable rule of judicial
estoppel generally prevents a party from prevailing in one phase of a case on
an argument and then relying on a contradictory argument to prevail in another
phase.@) (citing New Hampshire v. Maine,
532 U.S. 742, 749B51, 121 S. Ct. 1808, 1814
(2001)).  Accordingly, a party cannot be
judicially estopped if it did not Aprevail@ in the prior action.  Ferguson, 2009 WL 1901639 at *1.  The doctrine is not intended to punish
inadvertent omissions or inconsistencies but rather to prevent parties from
playing fast and loose with the judicial system for their own benefit.  Id.








In
this case, the Appellant moved to quash the first indictment, arguing that it
failed to allege an offense.  The State
agreed and filed its own motion to dismiss because A[t]he conduct alleged in the
indictment does not constitute an offense.@  Under the
circumstances, we cannot say that the State Aprevailed@ on its motion to dismiss, which
simply agreed with Appellant=s motion to dismiss; if anyone
prevailed, it was Appellant, who succeeded in having the indictment
dismissed.  Because the State did not Aprevail in the prior action,@ it cannot be judicially
estopped.  See id.  We therefore reject Appellant=s judicial estoppel argument.

Because
even a defective first indictment may toll limitations, we overrule Appellant=s argument that limitations was not
tolled by the allegedly defective first indictment.

E.               
Same
conduct, act, or transaction

Next,
Appellant argues that the first indictment did not toll limitations with regard
to the second because the two indictments do not allege the same conduct, act,
or transaction.[3]













If
the prior and subsequent indictments charge different offenses but the offenses
arise from the same conduct, the prior indictment tolls the statute of
limitations.  Id.  Two indictments arise from the same conduct
if they arise from the same underlying event or incident.  For example, in Hernandez, the court
of criminal appeals held that a prior indictment alleging possession of
amphetamine arose from the same conduct as a subsequent indictment alleging
possession of methamphetamine when both indictments referred to a controlled
substance found on the defendant=s person on a particular date.  Id. 
Likewise, the Fourteenth Court of Appeals held that in a case where the
defendant induced a minor to masturbate him, a prior indictment alleging
indecent exposure arose from the same conduct as a subsequent indictment
alleging sexual performance of a child.  Green
v. State, No. 14-08-00075-CR, 2009 WL 136917, at *1 (Tex. App.CHouston [14th Dist.] Jan. 20, 2009,
no pet.) (mem. op., not designated for publication).  Similarly, in a case where the evidence at
trial showed that the defendant assaulted and killed a single victim in a
single incident, the Tyler Court of Appeals held that a prior indictment
alleging murder arose from the same incident as a subsequent indictment
alleging assault.  Loredo v. State,
No. 12‑06‑00287‑CR, 2007 WL 2380346, at *2 (Tex. App.CTyler Aug. 22, 2007, no pet.) (mem.
op., not designated for publication).  On
the other hand, the Beaumont Court of Appeals held that two indictments Aobviously@ did not arise from the same conduct
when the prior indictment alleged a robbery committed in September 1998 and the
subsequent indictment alleged bail jumping committed in May 2001.  Ex parte Martin, 159 S.W.3d 262, 265
(Tex. App.CBeaumont 2005, pet. ref=d).

In
this case, the first indictment alleged that Appellant buried a training bomb
on January 26, 2002.  The second
indictment alleged that Appellant made a false report about a bomb and
possessed a hoax bomb on January 26, 2002. 
Although the indictments alleged different offenses, the offenses all
arose from the same conduct:  Appellant=s possession of and report about some
kind of bombChoax, training, or unspecifiedCon January 26, 2002.  In this regard, this case is much more like Hernandez,
Green, and Loredo than it is like Martin.  We therefore hold that the two indictments
arose from the same conduct, and we overrule this part of Appellant=s argument.

F.                
Sufficiency
of tolling paragraph








Finally,
Appellant argues that the second indictment=s tolling paragraph is not sufficiently specific to relate
back to the first indictment because it failed to indicate that the case was
previously filed under a particular district court case number or allege that
the indictment was for the same offense as the second indictment.  In Ex parte Smith, the court of
criminal appeals held that the deficiency of a tolling allegation Acould be raised only in a pretrial
motion to dismiss or quash@ the charging instrument.  178 S.W.3d 797, 805 (Tex. Crim. App. 2005).[4]  Because Adefects . . . [in a] tolling paragraph . . . do not destroy a
trial court=s power or jurisdiction to proceed,
. . . they may not be raised by means of a pretrial writ of habeas
corpus.  Instead, they may and must be
raised in a motion to quash or motion to dismiss the pleading.@ 
Id. at 803 (citations omitted). 
A[A]ny purported defects of form and
substance in . . . the tolling paragraph relate to notice and must be
brought to the trial court=s attention before trial or they are
waived.@ 
Id.








Although
Appellant referred to the second indictment=s tolling paragraph in her motion to dismiss the indictment,
she did not allege that the tolling paragraph was insufficiently specific, and
the tolling paragraph played no role in her argument.  Appellant also filed a pretrial petition for
writ of habeas corpus, which stated that it Araised the identical issue presented@ by her prior motion to dismiss and
made the same argument as the motion to dismiss.[5]  Appellant did not raise her complaint about
the tolling paragraph=s specificity until after trial in
her combined motion for arrest of judgment and for new trial.  By failing to raise her complaint about the
tolling paragraph before trial, she waived it. 
See id.

G.              
Conclusion

Because
(1) even a defective indictment will toll limitations, (2) the first and second
indictments arose from the same conduct, and (3) Appellant waived her complaint
about the tolling paragraph=s sufficiency, we hold that the trial
court did not err by denying Appellant=s motion to dismiss the second indictment and did not abuse
its discretion by denying her combined motion to arrest the judgment and for
new trial.  We overrule Appellant=s first two issues.

II.               
Legal
and Factual Sufficiency

In
her third and fourth issues, Appellant argues the evidence was legally and
factually insufficient to support her conviction for possessing a hoax
bomb.  The gist of Appellant=s argument is that the evidence
showed that the device she possessed was a Areal@ practice bomb, not a Ahoax@ bomb; she states that A[t]he sole fact at issue is whether the practice bomb was a
real bomb or a hoax bomb.@ 
The State contends that the hoax bomb statute unambiguously prohibits
possession of the device in question, regardless of whether it was a real bomb,
a simulated bomb, or a practice bomb.








A.              
The
hoax bomb statute

Penal
code section 46.08 defines the offense of possession of a hoax bomb as follows:

A person commits an
offense if the person knowingly manufactures, sells, purchases, transports, or
possesses a hoax bomb with the intent to use the hoax bomb to:

 

(1) make another
believe that the hoax bomb is an explosive or incendiary device; or

 

(2) to cause alarm or reaction of any type by an official of
a public safety agency or volunteer agency organized to deal with emergencies.

Tex. Penal Code
Ann. ' 46.08(a) (Vernon 2003).  Section 46.01(13) defines Ahoax bomb@ as

a device that (A) reasonably appears to be an
explosive or incendiary device or (B) by its design causes alarm or reaction of
any type by an official of a public safety agency or a volunteer agency
organized to deal with emergencies.

 

Id. ' 46.01(13) (Vernon Supp. 2008).  The code does not define Aexplosive or incendiary device,@ but it does define Aexplosive weapon@ as

any explosive or incendiary bomb, grenade, rocket, or
mine, that is designed, made, or adapted for the purpose of inflicting serious
bodily injury, death, or substantial property damage, or for the principal
purpose of causing such a loud report as to cause undue public alarm or terror,
and includes a device designed, made, or adapted for delivery or shooting an
explosive weapon.

 

Id. ' 46.01(2).








 

B.               
Can
a Areal@ bomb be a Ahoax@ bomb?

Appellant
focuses on the colloquial meaning of Ahoax@ and argues that a real bomb cannot
be a hoax bomb because Athe core meaning of >hoax= is . . . falsity.@ 
See Webster=s Ninth New Collegiate Dictionary 574
(1987) (defining Ahoax@ as Aan act intended to trick or dupe . .
. something accepted or established by fraud or fabrication@). 
Appellant contends that because the practice bomb was a Areal@ bomb, it could not be a false or hoax bomb.








But
the statutory definition of hoax bomb is not so constrained.  Section 46.01(13) defines Ahoax bomb@ as a device that (A) reasonably
appears to be an explosive or incendiary device or (B) by its design provokes a
public safety reaction.  Tex. Penal Code
Ann. ' 46.01(13).  Both halves of the definition are broad
enough to encompass Areal@ bombs; neither half is limited to Afake@ bombs.  Part (A) of
the definition includes a device that reasonably appears to be an explosive
device, regardless of whether it truly is an explosive device or turns out to
be fake.  Part (B) of the definition
includes a device that by its design provokes a public safety reaction,
regardless of whether the device is a real bomb or a fake bomb.  Despite the legislature=s use of the word Ahoax@ in sections 46.01(13) and 46.08, nothing in the penal code
suggests that the legislature intended those sections to apply only to fake
bombs,[6]
and its expansive definition of Ahoax bomb@ unambiguously rules out that
possibility.[7]

Thus,
in this case, it makes no difference whether the practice bomb was a real bomb
or a fake bomb as long as the evidence supports the elements of section
46.01(13) and 46.08.  With this in mind,
we turn to Appellant=s legal and factual sufficiency
arguments.








C.              
Legal
and factual sufficiency:  standards of
review

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all the evidence in the light most favorable to the prosecution in order
to determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).

When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party.  Neal v. State, 256 S.W.3d 264, 275
(Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 1037 (2009); Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
factfinder=s determination is clearly wrong and
manifestly unjust or whether conflicting evidence so greatly outweighs the
evidence supporting the conviction that the factfinder=s determination is manifestly
unjust.  Lancon v. State, 253
S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson, 204 S.W.3d at 414B15, 417.

D.              
The
evidence is legally sufficient.








Appellant
concedes that she Aplanted@ the practice bomb, which necessarily means that she also
knowingly possessed it.  See Tex.
Penal Code Ann. ' 46.08(a).  The State offered into evidence a similar
practice bomb (the State lost the one Appellant possessed) and photographs of
other, similar bombs; they reasonably appear to be explosive devices.  The evidence also shows that the device Acaused a reaction of any type@ by a public safety agency, namely,
police were dispatched to the location where Appellant said she found the
bomb.  Thus, the evidence is legally
sufficient to support the jury=s implied finding that the device was
a Ahoax bomb@ as defined by either half of section
46.01(13).

The
evidence also shows that upon Afinding@ the bomb, Appellant attempted to call 9-1-1 and, when she
could not do so on her own phone, asked McCartney to do so.  This is some evidence that Appellant
possessed the practice bomb with the intent to cause alarm or a reaction of any
type by an official of a public safety agency organized to deal with
emergencies, namely, the police.  The
fact that neither of the police officers who were dispatched to the scene was
especially alarmed by the practice bomb is irrelevant; the question is what
Appellant intended, and her 9-1-1 call shows that she intended to provoke a
police reaction.








Considering
the evidence in the light most favorable to the prosecution, we hold that a
rational jury could have found beyond a reasonable doubt that (1) Appellant knowingly
possessed a device (2) that reasonably appeared to be an explosive device or by
its design caused a reaction of any type by a public safety agency (3) with the
intent to cause a reaction of any type by a public safety agency.  See id. '' 46.01(13), 46.08(a). 
Thus, the evidence is legally sufficient to support her conviction for
possession of a hoax bomb, and we overrule her third issue.  See Jackson, 443 U.S. at 319,
99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.

E.               
The
evidence is factually sufficient.

In
addition to the foregoing evidence, the record shows that the Corps of
Engineers and other agencies advised residents to call 9-1-1 if they found a practice
bomb.  If Appellant had simply found the
bomb, then her calling 9-1-1 would not necessarily show that she intended to
provoke a public safety reaction.  But if
Appellant had simply found the bomb, rather than possessing it, then her action
would not fall within the conduct prohibited by section 46.08 at all.  Thus, the testimony about instructions to
call 9-1-1 upon discovery of a bomb does not militate against the jury=s verdict.








Appellant
argues that A[p]roof the bomb was harmless is
extremely weak.@ 
But because the penal code does not distinguish between real and fake
bombs in the definition of Ahoax bomb,@ the State was not required to prove
that the bomb was harmless.  Testimony
that neither the Corps of Engineers nor any other agency regarded the practice
bombs to be Ahoax bombs@ in the colloquial sense of Ahoax@ does not preclude them from being Ahoax bombs@ in the statutorily-defined
sense.  Likewise, evidence that
government agencies warned residents that the practice bombs could be dangerous
does not preclude them from falling within section 46.01(13)=s definition of Ahoax bomb.@

Considering
all of the evidence in a neutral light, we hold that the evidence supporting
Appellant=s conviction is not so weak, nor the
conflicting evidence so strong, that the jury=s verdict was manifestly unjust.  See Lancon, 253 S.W.3d at 704; Watson,
204 S.W.3d at 414B15, 417.  Thus, the evidence is factually sufficient to
support Appellant=s conviction, and we overrule her
fourth issue.

III.             
Decision
to Reopen Trial for Additional Testimony

In
her fifth issue, Appellant argues that the trial court erred by granting the
State=s motion to reopen the evidence to
establish venue.








The
State argues that Appellant failed to preserve error by not specifically
objecting at trial.  We disagree.  Appellant must show she timely presented her
complaint and the grounds therefore to the trial court and obtained an adverse
ruling.  Tex. R. App. P. 33.1(a)(1).  The objection need not be specific if the
trial judge was aware of the substance of the objection when it was made.  Cooper v. State, 961 S.W.2d 222, 228
(Tex. App.CHouston [1st Dist.] 1997, pet. ref=d); Kelly v. State, 903 S.W.2d
809, 811 (Tex. App.CDallas 1995, pet. ref=d). 
Appellant=s objection, although general,
immediately followed a lengthy discussion of venue, in which she voiced her
complaint that there was no evidence the events took place in Tarrant
County.  The trial judge was clearly
aware of the substance of the objection. 
See, e.g., Shedden v. State, 268 S.W.3d 717, 730 (Tex.
App.CCorpus Christi 2008, pet. ref=d) (holding no waiver where, prior to
Ano objection@ statement, the parties had held Aa lengthy discussion about the
suppression issues@); see also Alcocer v. State,
256 S.W.3d 398, 402 (Tex. App.CSan Antonio 2008, no pet.)
(concurring with judgment on grounds that courtroom discussion apprised trial
judge of grounds of objection because A[p]ublic confidence in our criminal justice system is eroded
when we fail to address the merits of a complaint because we too broadly
construe the rules applicable to waiver.@) (mem. op.) (Hilbig, J., concurring).  Thus, we will address the merits of Appellant=s claim.








The
decision to reopen is left to the sound discretion of the trial court.  Doyle v. State, 24 S.W.3d 598, 601
(Tex. App.CCorpus Christi 2000, pet. ref=d). 
The trial judge has the discretion to reopen a case to introduce
additional evidence if that evidence is vital to Adue administration of justice.@  Tex. Code Crim. Proc.
Ann. art. 36.02 (Vernon 2007).  The trial
judge should therefore reopen the case if the evidence would materially change
the case in the proponent=s favor.  Peek v. State, 106 S.W.3d 72, 79 (Tex.
Crim. App. 2003).  A trial court=s decision to reopen and allow the
State to prove venue is not an abuse of discretion.  See, e.g., Cox v. State, 494
S.W.2d 574, 575 (Tex. Crim. App. 1973); Martin v. State, 160 Tex. Crim.
364, 366B67, 271 S.W.2d 279, 280 (1954).  A trial court=s decision to reopen is discretionary even when the motion to
reopen was responsive to defendant=s motion for directed verdict.  Boatright v. State, 472 S.W.2d 765,
770 (Tex. Crim. App. 1971); Wall v. State, 878 S.W.2d 686, 690 (Tex.
App.CCorpus Christi 1994, pet. ref=d); Wolf v. State, 674 S.W.2d
831, 842 (Tex. App.CCorpus Christi 1984, pet. ref=d), overruled on other grounds,
Reed v. State, 744 S.W.2d 112 (Tex. Crim. App. 1988).








Appellant
asks this court to create an exception to the trial court=s discretion to reopen that would
prevent the State from waiting until the last minute to prove the essential
elements of the offense.  We decline
Appellant=s invitation to depart from settled
law.  See Garcia v. State, 829
S.W.2d 796, 800 (Tex. Crim. App. 1992) (discouraging courts from Ainvading the legislature=s province by reading into the law
that which is clearly not there.@), cert. denied, 538 U.S. 1059 (2003).  We note that Appellant herself waited until
the last available moment to object to venue by raising the issue just before
closing arguments.  See Hernandez v.
State, 198 S.W.3d 257, 268 (Tex. App.CSan Antonio 2006, pet. ref=d) (stating venue is presumed unless raised at trial); see
also Tex. R. App. P. 44.2(c)(1).

Because
the trial court had the discretion to reopen the evidence and allow the State
to prove its venue allegations and Appellant has not shown an abuse of that discretion,
we overrule her fifth issue.

IV.    Fair Notice

In
her sixth issue, Appellant contends the indictment deprived her of fair notice
of the charges against her as guaranteed by the Fifth, Sixth, and Fourteenth
Amendments to the United States Constitution and article I, section nineteen of
the Texas Constitution.[8]  We review Appellant=s argument under a de novo standard
because the sufficiency of a charging instrument presents a question of
law.  State v. Barbernell, 257
S.W.3d 248, 251B52 (Tex. Crim. App. 2008)








All
defendants have a constitutional right to notice of the specific charge against
them in state and federal courts.  Cole
v. Arkansas, 333 U.S. 196, 201, 68 S. Ct. 514, 517 (1948).  The Sixth Amendment requires that the
defendant be apprised of the Anature and cause@ of the accusation against him with
such clarity and detail that he can adequately prepare a defense.  Moff, 154 S.W.3d at 601; Garcia v.
State, 981 S.W.2d 683, 685 (Tex. Crim. App. 1998).  A reviewing court therefore looks to the
indictment to determine whether notice was sufficient.  See Lawrence, 240 S.W.3d at 916
(applying state and federal constitutional protections).  Indictments that follow the language of the
criminal statute under which a defendant is charged provide adequate
notice.  Id.  Indictments need not define terms when a
statutory definition is available.  State
v. Laird, 208 S.W.3d 667, 669 (Tex. App.CFort Worth 2006, no pet.) (citing Daniels v. State,
754 S.W.2d 214, 218 (Tex. Crim. App. 1988) (applying state and federal
constitutional provisions)).

Appellant=s notice argument, like her
sufficiency arguments, hinges on what she identifies as the distinction between
Areal@ bombs and Ahoax@ or fake bombs; she argues that the State indicted her for
possessing a hoax bomb but prosecuted her for possessing a real bomb.








But
as we explained in our sufficiency analysis, section 46.01(13) does not
distinguish between real and fake bombs; both can be Ahoax@ bombs if they otherwise meet the statutory definition.  The State indicted Appellant for possessing a
hoax bomb and prosecuted her for possessing a hoax bomb, regardless of whether
the bomb was real or fake, live or inert. 
The statutory definition of hoax bomb is broad enough to include real
bombs.  The indictment was not required
to set out the statutory definition of a hoax bomb.  See id.  Thus, the indictment for possessing a hoax
bomb was notice to Appellant of the specific charge against her, even if the
evidence showed that the practice bomb was a real bomb.  We overrule Appellant=s sixth issue.

V.     Lost Evidence

In
Appellant=s final issue, she argues that
because the State lost the practice bomb before trial, the trial court erred by
not granting Appellant=s combined motion in arrest of
judgment/motion for new trial.  Appellant
further contends the failure to preserve the bomb denied her due course of law
under article I, section nineteen of the Texas constitution.

To
preserve her complaint, Appellant was required to submit this issue to the
trial court.  See Tex. R. App. P.
33.1(a)(1); Carroll v. State, 266 S.W.3d 1, 3 (Tex. App.CWaco 2008, pet. ref=d). 
Neither Appellant=s combined motion in arrest of
judgment/motion for new trial nor her motion to quash raised this
argument.  Therefore, she forfeited her
complaint.  See Mendez v. State,
138 S.W.3d 334, 338B39 (Tex. Crim. App. 2004) (en banc); see
also Carroll, 266 S.W.3d at 3 (holding that defendant forfeited her
spoliation argument by not raising objection at trial).  We overrule Appellant=s seventh issue.








                                             Conclusion

Having
overruled all of Appellant=s issues, we affirm the trial court=s judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL: 
DAUPHINOT, GARDNER, and WALKER, JJ.

 

DAUPHINOT, J. concurs without opinion.

 

PUBLISH

 

DELIVERED: 
August 26, 2009











[1]The Aofficial proceeding@ alleged by the indictment
was a lawsuit between Southridge Hills homeowners and the developer.  The second count of the first indictment
alleged the identical conduct, but for the Aofficial proceeding,@ it alleged the police
investigation into the bomb=s discovery.





[2]In her motion for
rehearing, Appellant contends that A[b]oth Appellant and the State agreed that Teal
. . . is controlling@ and faulted this court
for not addressing Athis dispositive point.@  But Appellant did not cite Teal in any
of her briefs in this court, and the State cited Teal twice in passing.





[3]Appellant made the same
argument in Ahmad II, but we did not reach the argument; instead, we
held that the second indictment=s tolling paragraph sufficed to show that the
charged offense was not, at least on its face, barred by limitations and that
Appellant could not challenge the sufficiency of the tolling paragraph by
pretrial writ of habeas corpus.  2007 WL
80013, at *4.





[4]We note in passing that
Appellant relies on this court=s opinion in the same case to support the merits
of her argument.  But the court of
criminal appeals reversed our judgment, and on September 26, 2008, the records
of the case were expungedCincluding our previously
published opinion.





[5]Because Appellant=s petition for writ of
habeas corpus did not assert her complaint about the alleged tolling paragraph
defects, we need not decide whether a pretrial habeas petitionCeven though such defects
may not be raised by means of a pretrial writCis sufficient to bring
the complaint to the trial court=s attention and thus preserve error for appealCa possibility not
resolved by Ex parte Smith.  See
id.





[6]In this regard, the Texas
hoax bomb law is unique.  Four other
statesCFlorida, Nevada, New
Mexico, and West VirginiaCprohibit possession of Ahoax@ bombs (other states
prohibit the possession of devices that appear to be bombs, but their statutes
do not use the word Ahoax@).  But the relevant Florida, New Mexico, and
West Virginia statutes define Ahoax bomb@ as a device that appears to be an explosive
device but is, in fact, Aan inoperative [or inert]
facsimile or imitation.@  Fla. Stat. Ann. ' 790.165(1) (West
2008); N.M. Stat. Ann. ' 30‑7‑20
(West 2008); W. Va. Code Ann. ' 61‑3E‑1(c) (2008).  The Nevada statute defines Ahoax bomb@ as A(a) An inoperative
facsimile or imitation of an explosive or incendiary device; or (b) A device or
object that appears to be or to contain an explosive or incendiary device.@  Nev. Rev. Stat. Ann. ' 202.263(4)(a)‑(b)
(West 2008).  Thus, only Texas law
prohibits possession of a Ahoax bomb@ without any reference whatsoever to whether the
device is Aan inoperative facsimile
or imitation@ or a real bomb.  We note that the second half of Nevada=s Ahoax bomb@ definition appearsClike both parts of Texas=s definitionCbroad enough to include
both real and fake bombs that appear to be real.





[7]Appellant urges us to
consider the legislative history of the hoax bomb statute.  But the court of criminal appeals has
admonished Texas courts that A[i]f the plain language of a statute would lead
to absurd results, or if the language is not plain but rather ambiguous, then and
only then, out of absolute necessity, is it constitutionally permissible
for a court to consider . . . legislative history.@  Boykin v. State, 818 S.W.2d 782, 785B86 (Tex. Crim. App.
1991).  Because we hold the hoax bomb
statute is unambiguous, we need not resort to its legislative history to guide
our analysis.





[8]Because Appellant has not
argued that the protections in the Texas Constitution exceed or differ from the
protections in the United States Constitution regarding this point, we only
address Appellant=s arguments under the
United States Constitution.  See
Arnold v. State, 873 S.W.2d 27, 33 (Tex. Crim. App. 1993), cert. denied,
513 U.S. 830 (1994).